679 So.2d 302 (1996)
STATE of Florida, DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, DIVISION OF PARI-MUTUEL WAGERING, Appellant,
v.
WJA REALTY LIMITED PARTNERSHIP, d/b/a Tampa Jai Alai, Appellee.
No. 95-122.
District Court of Appeal of Florida, Third District.
August 14, 1996.
*303 John B. Fretwell, Chief Attorney, and Joseph M. Helton, Jr., Senior Attorney, and Lisa Nelson, Department of Business and Professional Regulation, for appellant.
William P. Cagney, III, Miami, for appellee.
Before JORGENSON, GODERICH, and GREEN, JJ.
PER CURIAM.
The Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering ("Division") appeals an adverse declaratory judgment which determined that for the period of December 1989 through August 24, 1992, WJA Realty d/b/a Tampa Jai Alai ("Tampa Jai Alai") was entitled to a $40,000 rather than a $25,000 tax exemption on daily handle (i.e. daily volume of wagered money) under section 551.06(3), Florida Statutes (1989) (since repealed by ch. 92-348, § 67, Laws of Fla.). We affirm.
Tampa Jai Alai is a licensed Florida pari-mutuel establishment which has operated a jai alai fronton in Hillsborough County since 1979.[1] Since at least 1987, Tampa Jai Alai has held a permit for winter racing dates which has allowed it to conduct 105 evening performances and 54 matinee performances at any time during this season without restriction. By statute, a 7.1% tax on daily handle was imposed upon Tampa Jai Alai and other jai alai permitholders for the privilege of operating a fronton. See § 551.06(3), Fla. Stat. (1989).[2] Some of the daily handle was tax exempt. During the relevant time period, the amount of the tax imposed was based upon the jai alai permitholder's total handle for the "preceding racing season." If the permitholder's total handle for the "preceding racing season" exceeded $30 million, the permitholder was entitled to a $25,000 daily tax exemption. If, however, the permitholder's total handle for the "preceding racing season" was below $30 million, the permitholder was entitled to a $40,000 daily tax exemption. § 551.06(3), Fla.Stat. (1989).
In 1987 and 1988, many jai alai frontons and greyhound track permitholders successfully convinced the legislature to grant them additional racing dates. See §§ 551.152, 551.153, and 551.155, Fla.Stat. (1989) (enacted at chapter 87-38, §§ 9-11, Laws of Fla.; repealed 1992 by ch. 92-348, § 67, Laws of Fla.). As a result, Tampa Jai Alai obtained the right to run a summer season in addition to its existing winter season. The legislature, however, imposed certain restrictions on Tampa Jai Alai's summer season, namely, (1) the summer dates could only be run between May 8 and September 3 of each year and (2) then only if these additional dates did not conflict with any days of operation currently authorized for any other permitholders who were located within a thirty-five (35) mile radius of Tampa Jai Alai. See § 551.153, Fla.Stat. (1989).
These additional summer dates granted to Tampa Jai Alai were taxed under a separate tax statute enacted in 1987. See § 550.095, Fla.Stat. (1987).[3] This taxing statute as enacted, *304 however, was repealed by the legislature in chapter 88-346, section 23, Laws of Florida effective July 6, 1988 and prior to the instant dispute between the Division and Tampa Jai Alai.[4] As with the tax on handle for a jai alai permitholder's original winter season, the legislature similarly provided either a $25,000 or $40,000 tax exemption on the daily handle for the additional summer dates. Thus, it is clear and undisputed that at least until 1987, the legislature specifically intended for the daily handle from the original season and the additionally granted season to be taxed separately.
During the spring legislative session in 1988, at the urging of the pari-mutuel establishment, the legislature doubled the number of racing dates for permittees who had not previously obtained additional racing dates in 1987.[5] The legislature then centralized and codified all of the amended racing dates for every greyhound and jai alai permitholder in section 550.0121, Florida Statutes (1989) (amended 1991 and repealed 1992). In section 550.0121, the legislature aggregated the additional racing dates granted to each permitholder with the permitholder's original racing dates without any restrictions except for Tampa Jai Alai:
[T]he permit located in Hillsborough County, presently held by Tampa Jai Alai, shall have an operational season during which it may conduct as many as 105 evening performances, plus as many as 54 matinee performances, furthermore, during the period from May 8 through September 3, it may conduct as many 105 additional evening performances, plus as many as 54 additional matinee performances, however, none of these additional performances shall conflict with any days of operation currently authorized for any permitholder located within a 35-mile radius of this facility.

Section 550.0121(2)(b), Fla.Stat. (1989) (emphasis added).
This seemingly anomalous treatment of Tampa Jai Alai's racing dates by the legislature is of particular significance because it was the catalyst for this long and protracted litigation between the Division and Tampa Jai Alai. At the core of this dispute between these parties is whether Tampa Jai Alai's "preceding racing season[s]" for the period of December 1989 through August 24, 1992 included the aggregate of its original winter season and its additionally granted summer dates for purposes of computing its total handle (and hence its allowable tax exemption) under section 551.06(3) (1989). Tampa Jai Alai argues that for the relevant time frame, it had two separate racing seasons for tax purposes under section 551.06(3) (1989). Tampa Jai Alai bases this argument upon the fact that the Florida legislature did not aggregate its restricted summer dates with its unrestricted winter dates under section 550.0121(2)(b) (1989). Since it is undisputed that the gross handle for Tampa Jai Alai's winter and summer seasons did not exceed $30 million when considered separately, Tampa Jai Alai asserts that it was entitled to a $40,000 rather than a $25,000 daily tax exemption. The Division, on the other hand, maintains that Tampa Jai Alai's "preceding racing season" for each of the years in question was comprised of both its unrestricted winter dates and its restricted summer dates. Since the total daily handle from Tampa Jai Alai's winter and summer racing dates when aggregated exceeded $30 million, the Division argues that Tampa Jai Alai was entitled only to a $25,000 daily tax exemption. The trial court construed the relevant statutes to mean that Tampa Jai Alai's winter and summer racing dates were not to be aggregated and thus that Tampa Jai Alai was entitled to a $40,000 daily tax exemption. This appeal followed.[6]
*305 The Division argues on this appeal, among other things, that tax exemptions are to be strictly construed against the claimant seeking the same and the burden is on the claimant to clearly demonstrate an entitlement to the tax exemption. Dade County Taxing Auths. v. Cedars of Lebanon Hosp., 355 So.2d 1202, 1204-05 (Fla.1978); Volusia County v. Daytona Beach Racing & Recreational Facilities Dist., 341 So.2d 498, 502 (Fla.1976) appeal dismissed, 434 U.S. 804, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977); State ex rel. Szabo Food Servs., Inc. v. Dickinson, 286 So.2d 529, 530-31 (Fla.1973); State ex rel. Wedgworth Farms, Inc. v. Thompson, 101 So.2d 381, 386 (Fla.1958). While that is certainly a correct statement of the law, we find that it has no applicability to the instant case. It is undisputed in this case that Tampa Jai Alai was entitled to a tax exemption on its daily handle pursuant to section 551.06(3). The issue, therefore, is not whether Tampa Jai Alai was entitled to a daily tax exemption, but the amount of the exemption. In order for us to decide this issue, we must determine whether or not the total handle from Tampa Jai Alai's "preceding racing season" as used in section 551.06(3) was the aggregate of its unrestricted winter racing dates and restricted summer dates.
Initially, we note that "preceding racing season" as used for jai alai frontons in section 551.06(3), Florida Statutes (1989) was not statutorily defined. In the absence of a statutory definition of "preceding racing season" for jai alai permitholders, we were required to look to the statutory definition of "racing season" for greyhound permitholders found in section 550.083, Florida Statutes (1989) (repealed 1992). §§ 551.03, 551.12, Fla.Stat. (1987) (both repealed 1992); see also State ex re. Gerstein v. Hialeah Race Course, Inc., 245 So.2d 53, 55 (Fla.1971). Section 550.083 (1989)[7] contained only two sentences, the second of which specifically defined "racing season" as "that period of time extending from September 5 of each year through September 4 of the following year." Both parties agreed below that this statutory sentence was applicable to the relevant time period in this dispute. It was only when Tampa Jai Alai sought to have the first sentence of section 550.083 read in conjunction with this second sentence that the Division took exception. The first sentence of section 550.083 provided that during the "season," owners of valid dogracing permits (and thus jai alai as well; see §§ 551.03, 551.12, Fla.Stat. (1989)) may hold "meetings at any time they choose," assuming compliance with the limit on the aggregate number of racing days fixed, etc. (emphasis added) In other words, racing dates whose time and place are in fact restricted are not part of the "season." We conclude that the trial court, in attempting to effectuate the legislative intent, properly construed both sentences of section 550.083 together to mean that Tampa Jai Alai's "preceding racing season" for purposes of section 551.06(3) included only its unrestricted winter racing dates between September 5th through September 4th of the following year, i.e., those dates where Tampa Jai Alai could hold race meetings "at any time they choose."[8]See, e.g., Florida Jai Alai, Inc. v. Lake Howell Water and Reclamation Dist., 274 So.2d 522, 524 (Fla.1973) (legislative intent should be gathered from consideration of the statute as a whole rather than from any one part thereof).
*306 It is clear to us that the legislature did not intend to aggregate Tampa Jai Alai's racing dates in section 550.0121 as it had done with other permitholders:
[T]he permit located in Hillsborough County, presently held by Tampa Jai Alai, shall have an operational season during which it may conduct as many as 105 evening performances, plus as many as 54 matinee performances, furthermore, during the period from May 8 through September 3, it may conduct as many as 105 additional evening performances, plus as many as 54 additional matinee performances, however, none of these additional performances shall conflict with any days of operation currently authorized for any permitholder located within a 35-mile radius of this facility. (emphasis added)
The legislature's use of the words "furthermore" and "additional" in the 1989 statute were not mere superfluity, as the Division contends. They conceptually separate Tampa Jai Alai's summer dates from its "operational season" as defined. We agree with the trial court that Tampa Jai Alai summer racing dates were segregated because of the restrictions imposed on such dates by the legislature.
Our conclusion that Tampa Jai Alai's winter and summer racing dates were not intended to be aggregated as one "racing season" is reinforced by the fact that after the commencement of this litigation, the legislature rewrote section 550.0121(2)(b) in Chapter 91-197, § 2, Laws of Florida, to specifically refer to Tampa Jai Alai's restricted summer racing dates as "an additional season... during which it may conduct as many as 105 additional evening performances plus as many as 54 additional matinee performances." See § 550.0121(2)(b), Fla.Stat. (1991). The trial court properly considered this subsequent amendment as a clarification of the legislature's original intent that Tampa Jai Alai's winter and summer racing meetings be kept separate. Lowry v. Parole and Probation Comm'n, 473 So.2d 1248, 1250 (Fla.1985) (noting that where "an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof"); Dickinson, 286 So.2d at 531 ("The mere [statutory] change of language does not necessarily indicate an intent to change the law for the intent may be to clarify what was doubtful and to safeguard against misapprehension as to existing law."); Lincoln v. Florida Parole Comm'n, 643 So.2d 668, 672 (Fla. 1st DCA 1994); see also Gay v. Canada Dry Bottling Co., Inc., 59 So.2d 788, 790 (Fla.1952) ("The court has the right and the duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation.").
In reaching our conclusion today, we have not overlooked the fact that an agency's construction of a statute which it administers is entitled to great weight and will not be overturned absent a showing that the agency's construction is clearly erroneous. Orange Park Kennel Club v. State of Fla. Dept. of Business and Professional Regulation, 644 So.2d 574, 576 (Fla. 1st DCA 1994). Nevertheless, we think that the trial court's construction of these statutes is the only reasonable interpretation of the legislature's intent especially in light of the legislature's 1991 clarification. Cf. Lincoln, 643 So.2d at 671 (following perceived legislative intent of habitual offender statute, in spite of judicial presumption that criminal statutes are to be construed favorably to the accused). If at the very least these statutes were deemed to be ambiguous, the great deference given to the Division's interpretation would have to yield way to the established principle that taxing statutes are to be construed liberally in favor of the taxpayer and against the tax collector. See, e.g., Florida Hi-Lift v. Department of Revenue, 571 So.2d 1364, 1368 (Fla. 1st DCA 1990). Accordingly, we find that the final declaratory judgment determining that Tampa Jai Alai was entitled to a $40,000 daily tax exemption for the period of December 1989 through August 24, 1992 was not error and we affirm.
We have carefully considered the Division's remaining points on appeal and determined *307 that they are without merit and/or do not warrant discussion.
Affirmed.
NOTES
[1] Its principal place of business, however, is located in Dade County.
[2] Section 551.06(3) provided in relevant part that:

The tax on handle for jai alai shall be 7.1 percent of the handle in excess of $25,000 per performance per day. However, when the handle for the preceding racing season is less than $30 million and $15 million or more, then the tax shall be paid on the handle in excess of $40,000 for each performance per day, and when the handle for the preceding racing season is less than $15 million, then the tax shall be paid on the handle in excess of $50,000 for each performance per day. (footnotes omitted)
[3] This statute provided in relevant part that:

(1) In lieu of the tax on handle as provided in... s. 551.06(3), for jai alai permitholders, the tax on handle for any additional days awarded under this act shall be as follows:
. . . . .
(c) For a permitholder conducting jai alai the tax on handle shall be 8.1 percent of the handle in excess of a daily exemption to be determined based on the average handle per performance for the preceding race season according to the following schedule:
1. Average daily handle less than $150,000 per performance: $50,000 tax exempt handle each performance.
2. Average daily handle from $150,000 to $300,000 per performance: $40,000 tax exempt handle each performance.
3. Average daily handle over $300,000 per performance: $25,000 tax exempt handle each performance.
[4] Hence, contrary to the Division's assertion, section 550.095 (1987) has no relevance to this litigation.
[5] Tampa Jai Alai explains that the legislature did this in an apparent response to the financial setback sustained by all pari-mutuel permittees as a result of a 1988 implementation of the Florida lottery and the eruption of a 1988 jai alai player strike.
[6] The whole of chapter 551, Florida Statutes (1991) was repealed by chapter 92-348, section 67, Laws of Florida, effective December 16, 1992. In fact, chapter 92-348 substantially rewrote the law on pari-mutuel wagering, including provision for tax on handle. See § 550.0951(3)(b), Fla.Stat. (1995); see also § 550.09511(2), Fla.Stat. (1995) (added in 1993; providing that the daily exemption for tax on handle depends on total handle collected during the preceding state fiscal year). Thus, a dispute such as this one is not likely to resurface. Nevertheless, we feel discussion is warranted.
[7] Section 550.083, Florida Statutes (1989) provided in relevant part that:

Owners of valid outstanding permits for dogracing in this state may hold race meetings at any time they choose during the "racing season" for the aggregate number of racing days fixed and permitted by law.... The words "racing season" as used herein mean that period of time extending from September 5 of each year through September 4 of the following year, commencing with September 5, 1973. (emphasis added)
[8] This is not to suggest that the additional summer dates are not subject to separate taxation. All dates are taxed. The omission of certain dates out of Tampa Jai Alai's "racing season" simply kept the fronton's total handle under $30 million for tax exemption purposes.