772 So.2d 588 (2000)
EQUITY CORP. HOLDINGS, INC., a Florida corporation, Mortgage Reduction Systems Equity Corp., a Florida corporation, Russell A. Whitney, individually and as owner/director of Equity Corp. Holdings, Inc. and Mortgage Reduction Systems Equity Corp., John Kane, individually and as director of Equity Corp. Holdings, Inc. and Mortgage Reduction Systems Equity Corp., Appellants,
v.
DEPARTMENT OF BANKING AND FINANCE, DIVISION OF FINANCE, Appellee.
No. 1D99-3481.
District Court of Appeal of Florida, First District.
December 1, 2000.
*589 Bruce Culpepper and James B. Culpepper of Akerman, Senterfitt & Eidson, P.A., Tallahassee, Attorneys for Appellants.
Diane E. Leeds, Assistant General Counsel, Department of Banking and Finance, West Palm Beach, Attorney for Appellee.
PER CURIAM.
This appeal arises from a final order of the Department of Banking and Finance (Department) ordering Appellants to cease and desist operating their Mortgage Payoff Acceleration Program (MPAP)[1] without a license, in accordance with chapter 494, Florida Statutes.[2] At issue on appeal is whether Appellants' operation of the MPAP comes under the 1997 statutory definition of "act as a mortgage lender."[3]
*590 The Department adopted the hearing officer's findings and conclusions that Appellants had control over the funds in question, were "servicing" the mortgage loans, and therefore were mortgage lenders requiring licensing.
We must reject this interpretation of sections 494.001(20) and 494.0025(1), Florida Statutes (1997), because it is inconsistent with the statute's plain meaning.[4] Further, penal and highly regulatory statutes such as these are strictly construed "so that those covered by the statute have clear notice of what conduct the statute proscribes."[5]City of Miami Beach v. Galbut, 626 So.2d 192, 194 (Fla.1993) (citing State v. Llopis, 257 So.2d 17, 18 (Fla.1971)). Here, Appellants'"receipt" of payments was not "pursuant to a mortgage loan," but rather resulted from its contracts with the borrowers. Appellants had no contractual relationship with, and did not act on behalf of, the lenders. Appellants' contracts with the borrowers do not come within the statutes.[6]
Our determination that the statutory language was not intended to encompass Appellants' business activities is bolstered by the legislature's subsequent amendment of the definition "service a mortgage loan," as follows:
to receive or cause to be received or transferred for another installment payments of principal, interest, or other payments pursuant to a mortgage loan.
Ch. 99-213, § 1, at 1303, Laws of Fla (emphasis in original).
The underscored language was added by the 1999 amendment for the apparent purpose of including the MPAP under the statute requiring licensing.[7] The 1999 amendment would have been unnecessary had the 1997 statute applied to Appellants' business activities. It is presumed that in adopting an amendment, the legislature intends to change the meaning of a statute unless a contrary intention is clearly expressed. See Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 364 (Fla.1977) (citing 30 Fla. Jur., Statutes § 97); United States Fire Ins. Co. v. Roberts, 541 So.2d 1297, 1299 (Fla. 1st DCA 1989).
We therefore REVERSE and REMAND with directions for the Department to enter an order consistent with this opinion.
BOOTH, J., and SHIVERS, DOUGLASS B., SENIOR JUDGE, CONCUR; BENTON, J., CONCURS IN THE JUDGMENT.
BENTON, J., concurring in the judgment.
Since appellant did not have to be licensed to engage in the activities in question *591 at any time before the final order was entered, the imposition of a five-thousand dollar administrative fine for acting as a mortgage broker without a license was unauthorized. Accordingly, I concur in reversing the final order which imposed the fine and prohibited further activities of the same kind without a license even before October 1, 1999. From that date forward, however, the amended statute governs. Ch. 99-213, §§ 1, 28, at 1303, 1316, Laws of Florida.
NOTES
[1] MPAP authorized bi-weekly, automatic and electronic transfers of one-half of homeowners' mortgage payments to individual bank accounts, and then to IPA, an entity solely responsible for printing the mortgage payment checks and mailing them to the lenders. This program assisted homeowners in paying off their principal sooner by making an additional mortgage payment each year. Homeowners received monthly reports regarding the status of their individual bank accounts and had full use of the monies in their accounts.
[2] It is unlawful for anyone to act as a mortgage lender in Florida without being licensed by the Department. See § 494.0025(1), Fla. Stat. (1997).
[3] According to 494.001(3), Florida Statutes (1997),

(3) "Act as a mortgage lender" means to make a mortgage loan or to service a mortgage loan for others or, for compensation or gain, or in the expectation of compensation or gain, either directly or indirectly, to sell or offer to sell a mortgage loan to a noninstitutional investor.
The statute further provides that "service a mortgage loan"
means to receive for another installment payments of principal, interest, or other payments pursuant to a mortgage loan.
§ 494.001(20), Fla. Stat. (1997).
Additionally, rule 3D-40.001(5), Florida Administrative Code, further defines "receive" as "obtaining possession of money or a negotiable instrument prior to receipt by the lender or investor." Id.
[4] A reviewing court may set aside agency action where "[t]he agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action". § 120.68(7)(d), Fla. Stat. However, this court is not required to adhere to the agency's statutory interpretation where it contravenes the statute's plain meaning. See Werner v. Department of Ins. & Treasurer, 689 So.2d 1211, 1214 (Fla. 1st DCA 1997) (citing PAC for Equality v. Department of State, Fla. Elections Comm'n, 542 So.2d 459, 460 (Fla. 2d DCA 1989)), rev. denied, 698 So.2d 849 (Fla.1997).
[5] The Department is authorized to order anyone acting as an unlicensed mortgage lender to cease and desist and to pay a fine not exceeding $5,000 for each violation. See §§ 494.0014(1), 494.0072(1)(e), (2)(k), Fla. Stat. (1997).
[6] Additionally, we reject the Department's construction of the statutory term "receive" as "control." Compare § 494.001(20), Fla. Stat. (1997), with Fla. Admin. Code R. 3D-40.001(5).
[7] Courts are permitted to consider subsequent legislation as evidence of the legislature's intent in construing a statute. See Department of Bus. & Prof'l Reg. v. WJA Realty Ltd. Partnership, 679 So.2d 302, 306 (Fla. 3d DCA 1996) (citing Lowry v. Parole & Probation Comm'n, 473 So.2d 1248, 1250 (Fla.1985), State ex rel. Szabo Food Servs., Inc. v. Dickinson, 286 So.2d 529, 531 (Fla.1973), and Lincoln v. Florida Parole Comm'n, 643 So.2d 668, 672 (Fla. 1st DCA 1994)).