664 So.2d 320 (1995)
Henry Ellis PELT, P.E., Appellant,
v.
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellee.
No. 93-3372.
District Court of Appeal of Florida, First District.
December 11, 1995.
Henry Ellis Pelt, pro se.
*321 Thornton J. Williams & Marianne A. Trussel of Department of Transportation, Tallahassee, for appellee.
WENTWORTH, Senior Judge.
This is an appeal of a Public Employees Relations Commission order adopting findings of a hearing officer and concluding that the appellee Florida Department of Transportation (DOT) properly imposed a five-day suspension on its employee Henry Ellis Pelt, appellant.
Pelt was suspended for violation of DOT Rule 14-17.012(4)(a)20, Florida Administrative Code, prohibiting "the use ... or the possession of an unauthorized weapon or firearm on Department property or on the job site." The order finds no dispute as to the fact that Pelt possessed a handgun while traveling on DOT business with a railroad crossing inspection team in a rural wooded area. During a break, Pelt positioned an old television set against a nearby tree, removed a handgun from the agency vehicle, walked a short distance from the car, fired at the television set four or five times to test his new gun, and replaced it under the car seat.
Pelt was aware of the above cited agency rule and never asked for clarification, but said he believed he was allowed to carry a firearm at work because he had obtained a license under Section 790.06, Florida Statutes, which license stated:
This license authorizes you to carry a concealed weapon or firearm for lawful self-defense... . It does not authorize the use of such weapon or firearm. Lawful use is regulated by other provisions of Florida law.
Pelt has been a DOT employee for 29 years and at the time in question held a position as Professional Engineer Administrator in Tallahassee. His former supervisor, five years earlier, knew Pelt obtained his weapons permit during a period of time he worked in other areas. His present supervisor was not aware of the permit, and no supervisor ever knew that Pelt carried a firearm at work or discussed or authorized him to arm himself. A fellow employee on the inspection team led by Pelt did know that Pelt carried a gun. The only employees DOT had authorized to carry weapons were sworn law enforcement officers who served as weight inspectors.
Pelt argued that Section 790.33, Florida Statutes, preempts DOT from regulating the possession and use of firearms by employees, and that the agency rule should be construed to apply only to possession or use of firearms not authorized under Section 790.33. We are persuaded by the reasoning of the hearing officer herein as follows:
Section 790.33 is directed toward local governments' regulation of the conduct of its citizenry, not to an employer's regulation of the conduct of its employees. Sound policy reasons exist for allowing an employer, be it public or private, to regulate the conduct of its employees as it relates to the possession and use of firearms. These relate to the safety of its employees and others who may be injured by the weapons, and the exposure of an employer to liability for the actions of its employees. State agencies commonly regulate employee conduct in this area. See, e.g., Fla. Admin. Code Rule 4E-1.006(4)(v) prohibiting employees of the Department of Insurance from possessing unauthorized firearms while on duty; Rule 17.130-800 prohibiting employees of the Department of Environmental Regulation (now Department of Environmental Protection) from possessing or use of unauthorized firearms; and Rule 33-4.002(27) prohibiting employees of the Department of Corrections from the unauthorized possession of firearms while on duty. Indeed, the Commission has affirmed an agency's application of its rules of conduct in this area to discipline employees. See Davis v. Department of Corrections, 4 FCSR ¶ 159 (1989), and Incardona v. Department of Corrections, 3 FCSR ¶ 013 (1988).
....
... The Agency does not recognize Pelt's license as the requisite authorization to possess or use a firearm while on Agency, business... . [I]n a similar case wherein an employee was in possession of a firearm that had not been authorized by his employer, the Commission affirmed the discipline of that employee notwithstanding his State license to carry a concealed weapon. Davis v. Department of Corrections, 4 FSCR ¶ 159 (1989).
AFFIRMED.
*322 DAVIS, J., concurs.
ZEHMER, C.J., dissents with opinion.
ZEHMER, Chief Judge (dissenting).
Pelt was suspended from work as a disciplinary penalty for violating the provisions of rule 14-17.012(4)(a)20 in the manner described in the majority opinion. The events occurred on February 9, 1993. He has contended throughout this proceeding that he did not know or realize that the conduct with which he was charged constituted a violation of the Department's rule because the rule in question did not explicitly prohibit this conduct. I agree with Pelt that the rule forming the basis for the charge of misconduct is too ambiguous to sustain the appealed order and thus do not concur in affirmance of the order imposing discipline.
The rule does not indicate what kind of authorization is required,[1] or from whom authorization must be obtained, for Pelt to carry a weapon or firearm on the job.[2] Nor does the rule specify the nature of prohibited use of such firearm.[3] For this reason, the Department found it necessary to introduce evidence of the Department's policy regarding the meaning and enforcement of this rule and, further, argued that, if Pelt had merely inquired about that policy, he would have known that his conduct on the occasion under consideration was prohibited.
The Department's position begs the question, which is, Did the rule itself give Pelt adequate warning that his longstanding practice of carrying a weapon with him to work and his shooting at some debris on that day in February 1993 was prohibited conduct? Indeed, after this matter was commenced, the Department, effective October 18, 1994, substantially amended rule 14-17.012 to make it more explicit in many ways. Not only does the amended rule now set forth in detail definitions of proscribed conduct, section 14-17.012(4)(a)20 contains the following added provision:
An "unauthorized weapon" is any weapon for which the possessor thereof has not *323 previously obtained from the Secretary or his designee written authorization for its possession; during the employee's work hours; or on Department property; or on the job site at anytime.
This amendment cures the deficiency I find with the previous rule.
I do not agree that a disciplinary penalty may be imposed for violation of a rule whose meaning must be explained by evidence defining department policy for enforcement of the rule when that policy has not itself been made the explicit subject of the rule after compliance with the rule-making process. This is not a case questioning the agency's authority to regulate or prohibit firearms on the job; it involves only the sufficiency of the rule language to give Pelt adequate notice that his conduct was prohibited. While I do not suggest that the conduct here involved should be permitted or condoned, the Department may easily accomplish its objective by adopting a properly drafted rule, as it now has, that adequately notifies employees that any possession and use of a firearm on the job is prohibited and thus stands on its own without the need for explanatory testimony or further inquiry of the Department by the affected employees. The Department should not be permitted to impose discipline upon an employee, who acted in good faith without knowledge that he had engaged in prohibited conduct, based on the agency's after-the-fact explanation of the meaning of the rule. For these reasons, I dissent.
NOTES
[1] As of the date of the occurrence of this episode rule 14-17.012(4)20 referred only to "Use, Threatening Use or Possession of Unauthorized Weapon or Firearm." No further definition was contained in the rule. While section (4) of the rule set forth conduct standards and disciplinary action ranges, it provided that, "Definitions of these Conduct Standards are contained in Department Procedure 250-012-010-a." The definitions contained in sub-paragraph 20 of this publication were received in evidence without objection by Pelt and formed the basis for charging Pelt in this case.
[2] Pelt had obtained a permit to carry a concealed weapon from the secretary of state's office while working for the Department in dangerous areas. The hearing officer found that:

1. Henry E. Pelt has been employed by the Agency for twenty-nine years, and presently holds the supervisory position of Professional Engineer Administrator in Tallahassee. He has no disciplinary record. Pelt has held a license from the Department of State, Division of Licensing, to carry a concealed weapon, for many years... .
2. Pelt obtained the permit because he has been assigned to remote areas he considered to be dangerous. His supervisor at that time, John Cross, knew he had a permit to carry a concealed weapon. Pelt's present manager, Fred Wise, has supervised Pelt for approximately five years. Wise was not aware of Pelt's permit prior to the incident at issue. Neither supervisor ever knew that Pelt carried a firearm at work, discussed with Pelt his right to carry a firearm while at work, or authorized Pelt to arm himself. From conversations he had had with Pelt, Safety Coordinating Engineer Basil McKnight knew that he carried a gun.
[3] The hearing officer made the following findings of fact:

6. Pelt has had extensive training in the use of firearms and he was careful in its handling. He did not fire in the direction of the other team members. Clark [a member of the team] was surprised when he turned and saw Pelt firing. None of the team members, however, felt threatened. Clark believed that Pelt's actions were inappropriate. McNichols [a team member] described the conduct as crass. However, no one placed much importance upon it at the time it happened. It had no effect upon McNichols' working relationship with Pelt or the Agency, or upon Pelt's working relationship with other members of the team.
....
8. Pelt later admitted to Wise that the handgun was his and that he had a license to carry a concealed weapon. Pelt was aware of the Agency's rule regulating the possession and use of firearms, but believed that his State-issued permit allowed him to carry a firearm at work. He has never asked his supervisors for clarification of the rule, nor has he received any instruction in the area.