VAN NORTWICK, J.
 

 Fred M. Johnson appeals a final judgment in favor of appellees on all counts of his Fourth Amended Complaint in which Johnson sought declaratory, injunctive and mandamus relief to bar appellee William Joseph Rish, Jr.’s development of wetlands on Rish’s property located near Johnson’s home on Cape San Bias. Johnson alleged that the development violated the comprehensive plan of appellee Gulf County, that Gulf County wrongfully refused to enforce its comprehensive plan and its regulations relating to replats with respect to Rish’s development activities, and that Rish wrongfully filled wetlands without first obtaining a permit. We agree with Johnson that the trial court erred in ruling that the wetlands on Rish’s property were “non-jurisdictional” and that, as a result, the County was not required to comply with the provision in its comprehensive plan that prohibited development within 50 feet of wetlands. Further, we hold that the trial court erred in ruling that Rish was not required to obtain a development order or development permit from the County before clearing and filling wetlands located on his property. Finally, we find that the trial court erred when it held that Rish was not required to comply with the County’s subdivision ordinance when he replat-ted his property and converted three lots into five new and different lots. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
 

 I.
 

 Factual and Procedural Background
 

 In Florida, each county must adopt a comprehensive plan for future development and growth,
 
 see
 
 sections 163.3164-.3215, Florida Statutes (2006), and obtain the approval of the Department of Community Affairs (DCA) with respect to its plan.
 
 See
 
 § 163.3177, Fla. Stat. (2006). In response to concerns raised by DCA when the County enacted its comprehensive plan in 1990, DCA and Gulf County entered into a settlement agreement in 1992 which states, in pertinent part:
 

 Future land use policy 1.1.10, will be revised to state the following:
 

 To promote the protection of wetlands and other surface water resources, specifically including the St. Joseph Bay Aquatic Preserve, the County shall require the following:
 

 
 *36
 
 Development within 50 feet of coastal waters and wetlands (including salt marsh areas) will be prohibited. Structures will be restricted to minor accessory structures such as elevated walkways, etc.
 

 This language was incorporated into Gulf County’s comprehensive plan.
 

 To implement comprehensive plans, counties are required to adopt and enforce land development regulations. § 163.3202, Fla. Stat. (2006). In 1993, Gulf County complied with the mandate of section 163.3202 by adopting Land Development Regulations, which, in pertinent part, state:
 

 1.02.01 General Applicability
 

 [T]he provisions of this Code shall apply to all development in Gulf County ... and no development shall be undertaken without prior authorization pursuant to this Code.
 

 1.03.02 Definitions
 

 DEVELOPMENT OR DEVELOPMENT ACTIVELY:
 
 Includes any of the following activities:
 

 1. Construction,
 
 clearing, filling,
 
 excavating, grading, paving, dredging, mining, and/or other similar activities.
 

 (Emphasis added). Gulf County, Florida, Unified Land Development Regulations §§ 1.02.01 and 1.03.02.
 

 Johnson owns property on Cape San Bias in Gulf County which fronts on St. Joseph Bay. In November 2005, Rish purchased a 4.12 acre parcel in close proximity to Johnson’s property. The Rish parcel consisted of a house, 2.13 acres of uplands and 1.99 acres of wetlands. After Rish’s attempted sale to another developer failed, Rish proceeded to develop the property himself.
 

 Prior to his purchase of this property, Rish submitted dredge and fill applications to the United States Army Corps of Engineers (Corps) and the Florida Department of Environmental Protection (DEP). DEP advised him by letter that it did not appear that his property was “located in Waters of the State or their landward extent as defined by Florida Administrative Code Rule 62-312.030,” and therefore he was not required to obtain a “Department of Environmental Protection wetland resource permit.” However, the letter states further: “Please be advised that this letter does not authorize any fill to be placed in regulated wetlands.” In addition, Rish received a letter from the Corps stating that he was not required to obtain a permit from the Department of the Army to develop his property. The letter advises that “[pjursuant to the U.S. Supreme Court’s January 9, 2001 decision concerning isolated wetlands, the on-site wetlands are not subject to the Corps’ regulatory jurisdiction.” In this proceeding, Rish and the County assert that, once Rish received letters from the DEP and the Corps, he could proceed to fill the wetlands on the property and that neither the County’s comprehensive plan nor its land use regulations prohibited the development of so-called non-jurisdictional wetlands.
 
 [1]
 

 
 *37
 
 On August 17 or 18, 2006, Rish began to clear and fill his property. The neighbors, including Johnson, protested to the County, but to no avail. On August 21, 2006, these parties filed a complaint seeking in-junctive relief alleging that the clearing violated Gulf County’s comprehensive plan because it failed to maintain a 50-foot buffer for the wetlands. The neighbors alleged standing under section 163.3215(3), Florida Statutes (2006).
 
 [2]
 

 The trial court dismissed the complaint ruling that Johnson and the other neighbors did not possess standing to seek relief under section 163.3215. This court reversed.
 
 Johnson v. Gulf County et al.,
 
 965 So.2d 298 (Fla. 1st DCA 2007) (holding that the trial court had abused its discretion in dismissing the case without allowing appellants an opportunity to amend).
 

 Throughout this litigation, Rish proceeded to clear and fill his property. On March 21, 2007, Rish filed his first “minor replat” application with the County.
 
 [3]
 
 Pri- or to that replat, Rish’s parcel of property was comprised of three lots, lots 4, 5 and 6, platted as follows:
 

 
 *38
 
 [[Image here]]
 

 The March 2007 replat created parcels “A,” “B,” and “C,” from what was previously lots 4, 5, and 6. Resulting parcel “A” consisted of a 0.661 acre portion of former lot 6. Resulting parcel “B” consisted of a 0.596 acre portion of former lot 6 and former lot 5. Resulting parcel “C” consisted of a 2.861 acre portion of former lots 4, 5, and 6. The reconfigured three lots were platted as follows:
 

 [[Image here]]
 

 On March 27, 2008, Rish filed a second ‘minor replat” which reconfigured the recently-created parcel C into three new parcels that were designated as a 0.67 acre
 
 *39
 
 parcel C, a 0.50 acre parcel D, and an approximately 1.691 acre parcel E. After the March 2008 replat, the property was configured as follows:
 

 [[Image here]]
 

 In 2007, Kish sold three of these lots to D & K of Northwest Florida, LLC (D & K), Panhandle Investment Group, LLC (Panhandle), and Edwards Properties, Ltd. (Edwards), respectively.
 

 The case went to trial on Johnson’s fourth amended complaint against the County, Rish, D & K, Panhandle, and Edwards seeking declaratory, injunctive, and mandamus relief. In Counts I through IV, Johnson alleged that the County allowed development in violation of its comprehensive plan and §§ 1.02.01 and 1.03.02 of its land development regulations. Johnson contended that these regulations require authorization from the County before a landowner may clear and fill land.
 

 In particular, Johnson alleged that under the comprehensive plan and county regulations, a landowner must first be granted a development order from the County which would allow neighboring landowners adversely affected to challenge the County’s determination within 30 days. Johnson asserted that only after an adversely affected party has been given an opportunity to challenge the development order can the County issue a development permit.
 
 [4]
 
 In Counts V and VI, Johnson
 
 *40
 
 challenged the manner in which Rish subdivided his parcel into five lots. The remaining counts of the Fourth Amended Complaint are not at issue in this appeal.
 

 At trial, David Richardson, the County-Planner for Gulf County, viewed photographs of the clearing and filling that Rish had performed, which essentially had eliminated the wetlands and placed truckloads of fill on the subject property, and he agreed that this activity did constitute “development” under the County’s ordinances. He maintained, however, that the letter that Rish received from DEP constituted the permit needed to develop this land. In contrast, DEP employee Christopher Stall testified that, while DEP may have found the wetlands on this property to not be within DEP’s jurisdiction, the letter that DEP wrote to Rish was not a permit for development. Susan Poplin, a DCA regional planning administrator, testified that under her interpretation of the 1992 DCA settlement with the County, the required 50-foot setback was only applicable to the St. Joseph Bay Aquatic Preserve. Dr. Hoffa, a retired Florida State University professor and one of Rish’s neighbors, testified that the wetlands on Rish’s property were within 140 to 175 feet from St. Joseph Bay and should have been subject to regulatory jurisdiction of the Corps. Don Butler, the County Administrator for Gulf County, testified that he interpreted the 1992 settlement to the comprehensive plan as requiring a 50-foot setback only from the waters of the St. Joseph Bay Aquatic Preserve. He testified that, if wetlands are determined to be non-jurisdictional by the Corps and DEP, Gulf County does not require any other permit before the property owner is allowed to place fill. He acknowledged that a property owner would need a permit for fill if he was putting in a subdivision. Jess Van Dyke, a retired DEP employee, testified as an expert for Johnson opining that the wetlands at issue in this case were connected to St. Joseph Bay and that DEP and the Corps were mistaken when they determined these wetlands were outside of their jurisdiction. Rish objected to Van Dyke’s testimony asserting that, since neither the Corps nor DEP were joined as parties in the lawsuit, evidence as to the jurisdiction of those agencies was irrelevant. The trial court excluded the testimony as irrelevant, but allowed Johnson to proffer Van Dyke’s testimony. On proffer, Van Dyke testified that, because the wetlands were adjacent to St. Joseph Bay, DEP and the Corps were required to take jurisdiction. Martin Gawronski, an environmental consultant, testified for Rish that, in his opinion, if you could travel completely around a wetland and find no surficial connection to waters of the state, the wetland would not be within the jurisdiction of DEP. On cross-examination, Gawronski did acknowledge that, if the wetlands were within 200 feet of the Bay, the Corps would have been in error to decline jurisdiction over these wetlands because, by rule, the Corps takes jurisdiction over wetlands if they are within 200 feet of waters of the United States.
 

 Thereafter, the trial court entered final judgment for appellees. With respect to Counts I, II, and III, the trial court found that all parties involved in the 1992 settlement that revised the County’s land use policy 1.1.10 testified consistently that they interpreted the provision for a 50-foot setback from wetlands to be limited to the St.
 
 *41
 
 Joseph Bay Aquatic Preserve. Thus, the trial court found that the 50-foot setback was not applicable to the wetlands on Rish’s property. The court rejected Johnson’s attempt to dispute the determinations of DEP and the Corps that these wetlands were non-jurisdictional because neither DEP nor the Corps were joined in the lawsuit.
 

 Turning to Gulf County’s practice of allowing the filling of wetlands when they have been determined to be non-jurisdictional by DEP and the Corps, the trial court found that Johnson failed to prove that Rish’s clearing and filling activities materially altered the use, density, or intensity of the use of the land pursuant to section 163.3215(3). Next, the court rejected Johnson’s contention that the County should have issued a development order and, then, a permit before any clearing or filling activities occurred finding that, “even if a written permit were issued, or required to be issued by the court, the result would be the same. A written permit (or a de facto permit) authorizing the filling of non-jurisdictional wetlands is not inconsistent with the comprehensive plan.”
 

 Finally, the court rejected Johnson’s assertions that Rish’s development violated the subdivision ordinance. The court noted that the subdivision ordinance allows the County to permit division of a single lot or parcel of land into two lots through a minor replat. The court found that the minor replat recorded in March 2007 simply moved boundaries and did not increase the number of lots or parcels. The court found that the minor replat recorded in March 2008 merely permitted one tract to be divided into two parcels so compliance with the subdivision ordinance was not required. This appeal ensued.
 

 This court reviews
 
 de novo
 
 the trial court’s interpretation of Gulf County’s comprehensive plan, land use regulations and subdivision ordinance.
 
 B.Y. v. Dep’t of Children and, Families,
 
 887 So.2d 1253, 1255(Fla.2004).
 

 II.
 

 Gulf County Comprehensive Plan
 

 The 1992 settlement agreement which revised future land use policy 1.1.10, unambiguously provides that “[development within 50 feet of coastal waters and wetlands (including salt marsh areas) will be prohibited.” As this language is not ambiguous, the trial court erred in accepting parol evidence to determine the meaning and intent of the language of this land use policy.
 
 Jenkins v. Eckerd Corp.,
 
 913 So.2d 43, 52 (Fla. 1st DCA 2005) (“If a contract provision is ‘clear and unambiguous’ a court may not consider extrinsic or ‘parol’ evidence to change the plain meaning set forth in the contract.”). As the Supreme Court has explained:
 

 It is a fundamental principle of statutory construction that where the language of a statute is plain and unambiguous there is no occasion for judicial interpretation .... Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity.... If it has been passed improvidently the responsibility is with the Legislature and not the courts.
 

 Forsythe v. Longboat Key Beach Erosion Control Dist.,
 
 604 So.2d 452, 454 (Fla.1992) (quoting
 
 Van Pelt v. Hilliard,
 
 75 Fla. 792, 78 So. 693, 694-95 (1918)).
 

 Despite this unambiguous language in its comprehensive plan, the County maintains that, in Gulf County, there are jurisdictional and non-jurisdictional wetlands. As noted,
 
 see
 
 footnote 1,
 
 supra,
 
 the juris
 
 *42
 
 dictional wetlands are ones over which DEP or the Corps have taken jurisdiction. The County asserts that all other wetlands are non-jurisdictional wetlands over which the County has no control. For this proposition, the County relies upon section 4.01.01 of its land use regulations which provides:
 

 Water’s Edge and Wetland’s Edge:
 

 The water’s or wetland’s edge shall be determined by whichever of the following indices yields the most landward extent of waters or wetlands.
 

 1. the boundary established by the annual mean high water (MHW) mark or
 

 2. the landward boundary of wetland vegetation as established by the Florida Department of Environmental Protection (FDEP) or U.S. Army Corps of Engineers (COE) jurisdiction determination.
 

 Gulf County Fla. Unified Land Development Regulations § 4.01.01.
 

 The County maintains that, because the Corps and DEP both determined that Rish’s property contained only non-jurisdictional wetlands, Gulf County could require nothing additional from Rish prior to his clearing or filling his property. We reject this interpretation because it is inconsistent with the 1992 settlement that was incorporated into the County’s comprehensive plan.
 

 The County is required to implement its comprehensive plan “through the adoption of land development regulations that are
 
 consistent with the plan.” Bd. of County Commr’s of Brevard County v. Snyder,
 
 627 So.2d 469, 473 (Fla.1993) (emphasis added). The County cites no authority for the proposition that it can enact a land use regulation which is inconsistent with its comprehensive plan. Should section 4.01.01 be l'ead to relieve the County from prohibiting or regulating “[djevelopment within 50 feet ... [of wetlands]” this would violate section 163.3202(1), Florida Statutes (2006), which provides that “[e]ach county ... shall adopt or amend and enforce land development regulations that are
 
 consistent
 
 with and implement their adopted comprehensive plan.” (emphasis supplied). We do not believe it is necessary, however, to reach a conclusion that section 4.01.01 is an inconsistent regulation. The language of this regulation should be read as determining the “Wetlands Edge” for the purpose of the comprehensive plan. It does not establish a limit to the County’s jurisdiction to regulate development of wetlands. Thus, in short, Gulf County’s comprehensive plan required it to take jurisdiction and regulate any development within 50 feet of wetlands under its land development regulations.
 

 III.
 

 Development Order Required,
 

 Gulf County’s land use regulation § 1.03.02(1) defines “development or development activity” as including “clearing” and “filling.” Accordingly, before a developer may engage in this development activity, the County is required to enter a “development order” pursuant to its land regulations. Gulf County, Florida, Unified Land Development Regulations § 2.00.03. The record is clear that Rish’s clearing and filling activities constituted “development” under § 1.03.02(1). More importantly, Gulf County’s comprehensive plan required development on the Rish parcel to comply with a 50-foot setback from the wetlands on that property. Under the circumstances here, we hold that the County was required to issue a development order before Rish’s activities could proceed.
 

 On remand, Rish, D & K Panhandle, and Edwards shall comply with all laws and
 
 *43
 
 regulations governing the development of the subject property. The County shall comply with its land use regulations by issuing a development order. Moreover, because Johnson asserts that the development proposed and accomplished by Rish violates the County’s comprehensive plan, Johnson is entitled to a
 
 de novo
 
 hearing to challenge the decision of Gulf County to permit Rish’s development. § 163.3215(3), Fla. Stat. On remand, the County shall determine whether other remedies are necessary or appropriate, including requiring Rish, D & K Panhandle and Edwards to restore the wetlands previously on their portion of the subject property to the condition that existed prior to Rish’s development activities. Further, development activities on the subject property shall be enjoined until the completion of such proceedings.
 

 IV.
 

 DEP and The Corps
 

 The Corps’ jurisdiction arises under the Clean Water Act which seeks “to restore and maintain the chemical and physical and biological integrity of the Nation’s waters ...” 33 U.S.C. § 1251(a) (2006). “[Wjaters of the United States” include “[wjetlands adjacent to those waters which are currently used ... in interstate or foreign commerce.” 33 C.F.R. § 328.3(a)(1), (7). As explained in the information sheet attached to the letter received by Rish from the Corps, “[t]he term ‘adjacent’ means bordering, contiguous, or neighboring. Wetlands separated from other waters of the U.S. by man-made dikes or barriers, natural river berms, beach dunes, and the like are also adjacent.”
 
 See also
 
 33 C.F.R. § 328.3(c).
 

 Regarding DEP jurisdiction, Florida Administrative Code Rule 62-312.030 explains when DEP will take jurisdiction and require a dredge and fill permit for dredging and filling conducted “in, on, or over those surface waters of the State.” Upon request, DEP will give a formal jurisdictional determination to “a property owner, a person who has power of eminent domain, or any other person with a legal or equitable interest in a property.” Fla. Admin. Code R. 62-312.040(1). With respect to wetlands, Florida Administrative Code Rule 62-312.045 provides “isolated wetlands that infrequently flow or otherwise exchange water with the described water body are not intended to be included within the dredge and fill jurisdiction of the department.”
 

 In the proceeding below, testimony was adduced as to whether DEP and the Corps correctly declined to exercise jurisdiction over this development. Specifically, several issues were raised: whether there is a significant nexus between the wetlands and St. Joseph Bay,
 
 see Rapanos v. United States,
 
 547 U.S. 715, 126 S.Ct. 2208, 165 L.Ed.2d 159 (2006); whether the Corps’ reliance upon the 2001 decision of the United States Supreme Court in
 
 Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers,
 
 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001) for its non-jurisdiction letter was incorrect in light of
 
 Rapanos;
 
 whether the wetlands which were located on Rish’s property were within 200 feet of St. Joseph Bay; and whether the waters of St. Joseph Bay and the wetlands were connected infrequently. Neither the Corps nor DEP was a party to the litigation below. Accordingly, we will not address the jurisdiction of these two agencies. Upon remand and the County’s issuance of a development order, assuming that Johnson requests a
 
 de novo
 
 hearing, the extent to which he may introduce evidence challenging the decisions of DEP and the Corps can be addressed by the trial court. The jurisdiction of these two agencies, however, is
 
 not
 
 determina
 
 *44
 
 tive of the County’s jurisdiction to administer its comprehensive plan and land use regulations.
 

 V.
 

 Subdivision Ordinance
 

 The County’s subdivision ordinance provides in section 2.1 that a “[subdivision shall mean the platting of real property into three or more lots, ...” Pursuant to section 2.7, a “minor replat” means “[t]he subdivision of a single lot or parcel of land into two (2) lots or parcels.” When Rish purchased the property in 2005, it consisted of three adjoining lots. Through the use of two “minor replats,” Rish reconfigured all of those lots and added two lots to make a parcel of land consisting of five lots, none of which were the same as the three lots which he purchased in 2005.
 

 We agree with Johnson that the lower court erred in ruling that Rish’s new five-lot subdivision was not required to comply with the County’s subdivision ordinance. We reject the trial court’s reasoning that Rish was not obligated to comply with the subdivision ordinance because the first replat simply moved the boundaries of the lots. Changing the boundaries of lots is not a recognized exception to the subdivision ordinance. Moreover, original lot 4 became an expanded lot which included portions of original lots 5 and 6. Thus, in effect, Rish created a subdivision by reconfiguring his property into three new and different lots. The minor replat exception to the subdivision ordinance is inapplicable here because it is specifically limited to one lot or parcel. The evidence is undisputed that in the second minor replat which replatted parcel C, the parent tract was divided into three new parcels, not two. In the replat, Rish reduced parcel C from 2.861 acres to .67 acres, and created a new parcel D, consisting of .50 acres, and E, consisting of 1.69 acres. We find no exception in the County’s subdivision ordinance which allows the creation of three lots from one without a development plan. Moreover, the land development regulations provide that there shall be “[n]o further division of an approved Minor Replat ... unless a development plan is prepared and submitted in accordance with this Article.” Gulf County Florida Unified Land Development Regulations § 2.03.02(b). This provision expressly prohibits a second replat of the same land without a development plan.
 

 Allowing Rish to circumvent the subdivision ordinance enabled him to create five lots in his development rather than three. Further, because no development plan was required, Rish was not obligated to satisfy the street width and surface requirements of the ordinance. Gulf County, Florida, Ordinance No. 2002-01, Article 4. The subdivision ordinance also requires the planning department to place notice in a newspaper before the proposed final plat is accepted.
 
 Id.
 
 at art. 3, § 3. Johnson correctly argues that, because he and his neighbors never received notice of Rish’s replats, they were denied their right to submit comments, as permitted by article 3, section 3 of Ordinance No. 2002-01. Accordingly, the trial court erred when it failed to grant a declaratory judgment against Gulf County for failure to enforce the terms of its subdivision ordinance. Further development activity shall be enjoined until appellees comply with the subdivision ordinance.
 

 REVERSED and REMANDED for further proceedings consistent with this opinion.
 

 BARFIELD, and KAHN, JJ., concur.
 

 [1]
 

 . The so-called “jurisdictional wetlands” are those wetlands over which the DEP and Corps exercise jurisdiction.
 
 See
 
 33 C.F.R. § 331.2 (Corps makes a jurisdictional determination when it provides a written determination “that a wetland ... is subject to regulatory jurisdiction under [the Clean Water Act];”
 
 Fairbanks N. Star Borough v. U.S. Army Corps of Engineers,
 
 543 F.3d 586 (C.A.9 2008) (wetlands jurisdictional determination alone was not reviewable in federal district court); Fla. Admin. Code R. 62-312.030-.050 (explaining when DEP takes jurisdiction and requires a permit for dredging and filling). The County takes the position that all other wetlands are "nonjurisdictional” wetlands over which it has no control.
 
 See
 
 section IV,
 
 infra.
 

 [2]
 

 . Section 163.3215(3), Florida Statutes (2006), provides in pertinent part:
 

 (3) Any aggrieved or adversely affected party may maintain a de novo action for declaratory, injunctive, or. other relief against any local government to challenge any decision of such local government granting or denying an application for, or to prevent such local government from taking any action on, a development order, as defined in s. 163.3164, which materially alters the use or density or intensity of use on a particular piece of property which is not consistent with the comprehensive plan adopted under this part.
 

 Section 163.3164(6), Florida Statutes (2006) provides that “Development” has the same meaning as that term is given in section 380.04. Section 163.3164(7) defines “Development order” as meaning "any order granting, denying, or granting with conditions an application for a development permit.” Section 380.04 provides in pertinent part:
 

 (1) The term “development” means the carrying out of any building activity or mining operation, making of any material change in the use or appearance of any structure or land, or the dividing of land into three or more parcels.
 

 (2) The following activities or uses shall be taken for purposes of this chapter to involve "development” as defined in this section:
 

 [[Image here]]
 

 (0 Clearing of land as an adjunct of construction.
 

 (g) Deposit of refuse, solid or liquid waste, or fill on a parcel of land.
 

 [3]
 

 . Gulf County’s subdivision ordinance provides that a landowner may undertake a "minor replat" of property without approval of the County. This ordinance provides:
 

 Article 2 — Definitions
 

 2.1
 
 Subdivision
 
 shall mean the platting of real property into three or more lots, ...
 

 [[Image here]]
 

 2.7 Minor Replat: The subdivision of a single lot or parcel of land into two (2) lots or parcels ...
 

 [[Image here]]
 

 2.9 Minor Subdivision shall mean the division of real property resulting in 3 or more, but less than 10, lots, blocks, parcels, tracts, tiers and units.
 

 Gulf County, Florida, Ordinance No. 2002-01.
 

 [4]
 

 . In Gulf County's development regulations, a "development order" and a "development permit” are defined as follows:
 

 Development Order:
 

 An order granting, denying, or granting with conditions an application for approval of a development activity. A distinction is made between a development order and a building permit. A development order is the County authorization of a proposed development project. Such authorization must be granted by the County prior to issuance of a building permit by the County as defined for purposes of these regulations. (The development order authorizes the project, whereas the building permit authorizes specific components of the project, such as building construction, sign installation, and the like.) ...
 

 Development Permit:
 

 For purposes of this Code, a development permit is that official City/County document which authorizes the commencement of construction or land alteration without
 
 *40
 
 need for further application and approval
 

 [[Image here]]
 

 Gulf County, Florida, Unified Land Development Regulations § 2.00.03;
 
 see also
 
 § 163.3164(7) and (8), Fla. Stat. (2006), footnote 2,
 
 supra.