ROBERTS, J.
The appellants, Florida Carry, Inc., and Alexandria Lainez, appeal a final order denying their motion for temporary injunction and a final order granting the motion to dismiss of the appellees, University of North Florida (UNF) and John Delaney. At issue in this case is whether a state university may prohibit the carrying of a securely encased firearm within a motor vehicle that is parked in a university campus parking lot. We hold that the legislature has not delegated its authority under the Florida Constitution to regulate the manner of bearing arms to the state universities and reverse the orders on appeal.
Facts and Procedural History
Section 14.0080P of the policies and regulations adopted by UNF bans the storage of any “weapon or destructive device,” as defined by section 790.001, Florida Statutes (2011), in a vehicle located on UNF property. Section 790.001(6), Florida Statutes (2011), includes firearms in the definition of “weapon or destructive device.” As provided in Section 5.0010R(J) of the Student Conduct Code, UNF may impose sanctions, including suspension and expulsion, upon a student who violates the regulation. In addition, section 5.0010R(J) specifically authorizes a referral to law enforcement for criminal prosecution stating that a student, resident, or commuter found in violation of the regulation “will be *969 subject to arrest and/or discipline in accordance with Florida State Statute and the Student Conduct Code.”
The facts of this case are undisputed. Lainez, a student enrolled at UNF, and Florida Carry, Inc., an organization of gun owners of which Lainez is a member, filed a lawsuit to challenge UNF’s regulation. The complaint alleged that Lainez desires to carry a firearm while traveling to and from school as a lawful method of self-defense and that she wishes to store the firearm in her vehicle while on campus. The complaint argued that UNF had no authority to adopt the regulation in question because the Florida legislature had expressly preempted the entire field of firearms regulation in section 790.33(1), Florida Statutes (2011). The complaint sought an award of damages or, in the alternative, a statutory fine, a declaration that UNF’s regulation was invalid, and an injunction prohibiting the enforcement of the regulation. The appellants also sought a temporary injunction during the pen-dency of the case to prevent the enforcement of any UNF rules or regulations regarding the otherwise lawful possession of a weapon or firearm in a vehicle and- to prevent the punishment of any student for the same.
The appellees moved to dismiss the complaint, arguing that UNF was authorized to regulate firearms possession and storage on school property in accordance with section 790.115, Florida Statutes (2011). UNF maintained that the regulation was authorized under section 790.115(2)(a)3., Florida Statutes (2011), which provides that firearms may not be possessed on school property except when securely encased in a vehicle, but that “school districts” may adopt policies to waive the secure encasement exception. The appellants countered that UNF was not a “school district;” therefore, it was not authorized to waive the exception and prohibit firearms in vehicles on its campus.
After hearings on the motions, the trial court denied the appellants’ motion for temporary injunction and granted the ap-pellees’ motion to dismiss. The trial court reasoned that applying the appellants’ definition of “school district” to section 790.115 would permit only public schools to regulate firearms on their property and frustrate the clearly expressed intent of the legislature to cover all schools as the term “school” was broadly defined in section 790.115(2)(a).
On appeal, the appellants argue: (1) that the legislature clearly intended to preempt regulation of firearms by any other agency or subdivision of the state; (2) that the legislature has determined it is lawful to carry a weapon or firearm securely encased in a vehicle and that right should be liberally construed; and (3) that the legislature has not granted any affirmative authority to UNF to waive the secure encasement provision in section 790.115(2)(a)3. We agree with the appellants’ arguments.
Prior to oral argument, this court, through the three-judge panel, ordered the parties to be prepared to address the following questions:
1. Does a state university have independent authority under Article IX, section 7 of the Florida Constitution as interpreted in [Graham v. Haridopolos, 108 So.3d 597 (Fla.2013),] and NAACP, Inc. v. Florida Board of Regents, 876 So.2d 636 (Fla. 1st DCA 2004), to adopt a noncriminal policy or regulation concerning the possession of firearms on campus, irrespective of any right it may have under section 790.115(2)(a)3., Florida Statutes, to waive the exception that would allow a student to possess a firearm in a vehicle?
*970 2. Does the University of North Florida qualify as a “local or state government” such that its policies and regulations could be preempted by section 790.33, Florida Statutes?
3. Does the provision of the student handbook at issue in this case qualify as an “ordinance,” “rule,” or “administrative regulation” within the meaning of section 790.33, Florida Statutes?
The panel then requested supplemental briefing from the parties on the questions above.
Analysis
I. Section 790.115, Florida Statutes
We first emphasize that the only legal question presented, argued, and decided by the trial court was whether section 790.115 allowed UNF to prohibit a student, who was otherwise lawfully able to possess a firearm, from keeping said firearm securely encased in her vehicle in a campus parking lot. In its answer brief before this court, UNF advanced only its views regarding the interpretation of section 790.115.
The legislature has provided that a person shall not possess a firearm on school property unless part of a school-sponsored event. See § 790.115(2)(a), Fla. Stat. (2011). This section defines “school” broadly to encompass preschool and elementary through secondary schools as well as career centers and post-secondary schools, whether public or private. See id. Importantly, the legislature also provided exceptions to this general prohibition. See § 790.115(2)(a)l.-3., Fla. Stat. (2011). Namely, that a person may carry a firearm in a vehicle pursuant to section 790.25(5), Florida Statutes (2011), which provides that a firearm may be kept in a private conveyance as long as it is securely encased. The provisions of section 790.25 authorizing the carrying of securely encased firearms in private conveyances as well as other lawful carrying of firearms “shall be liberally construed to carry out the declaration of policy herein and in favor of the constitutional right to keep and bear arms for lawful purposes.” § 790.25(4), Fla. Stat. (2011).
While it provides an exception to the general prohibition, section 790.115(2)(a)3. also contains a waiver provision providing that “school districts may adopt written and published policies that waive the exception in this subparagraph for purposes of student and campus parking privileges.” § 790.115(2)(a)3., Fla. Stat. (2011). The statute clearly grants school districts the power to waive the exception — not colleges or universities. UNF attempted to exercise this waiver in adopting the operative regulation; however, UNF is not a “school district.” Section 790.115 only uses the term “school district” once; outside of subsection 790.115(2)(a)3., the statute uses the word “school” alone. UNF, as a public post-secondary school, falls within the definition of a “school” in section 790.115(2)(a), but that does not mean that it also falls within the definition of “school district,” a term that is not defined in section 790.115.
Where the legislature has not defined the words used in a statute, the language should be given its “plain and ordinary meaning.” See Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Sch., Inc., 3 So.3d 1220, 1233 (Fla.2009) (quoting Fla. Birth-Related Neurological Injury Comp. Ass’n v. Fla. Div. of Admin. Hearings, 686 So.2d 1349, 1354 (Fla.1997)). The appellees contend that the legislature intended “school districts” to be interpreted broadly to include a state university board of trustees. Such a construction is contrary to the plain and ordinary mean *971 ing of “school district” as it is used in the Florida Constitution and statutes.
Article IX, section 4, of the Florida Constitution provides:
(a) Each county shall constitute a school district.... In each school district there shall be a school board composed of five or more members chosen by vote of the electors in a nonpartisan election for appropriately staggered terms of four years, as provided by law.
(b) The school board shall operate, control and supervise all free public schools within the school district and determine the rate of school district taxes within the limits prescribed herein....
Florida’s K-20 Education Code, Chapters 1000-1013, Florida Statutes (2011), sets forth the governing structure of Florida’s various educational entities. Significantly here, School District Governance (Chapter 1001, Part II, Florida Statutes (2011)) is separate, by statute, from State Universities (Chapter 1001, Part IV, Florida Statutes (2011)). The provisions concerning School District Governance provide that each county constitutes a school district, that the district school system shall include all' public schools in that district under the direction of district school officials, and that the district school board “shall operate, control, and supervise all free public schools in their respective district.” See §§ 1001.31-1001.33, Fla. Stat. (2011). In contrast, the state university system is organized and governed differently than the public district school system. The state university system is operated and regulated by the state board of governors, and each university within the system is operated by a board of trustees under the powers and duties granted by the board of governors. See Art IX, sec. 7(e)-(d), Fla. Const.; Ch. 1001, Part IV, Fla. Stat. (2011). Thus, by law, “school districts” are distinct legal entities that do not operate and control state universities.
Also significant here, the term “school district” is only used in subsection 790.115(2)(a)3. while the rest of section 790.115 simply uses the term “school.” Where the legislature includes wording in one section of a statute and not in another, it is presumed to have been intentionally excluded. See Bd. of Trs. of Fla. State Univ. v. Esposito, 991 So.2d 924, 926 (Fla. 1st DCA 2008) (quoting L.K. v. Dep’t of Juvenile Justice, 917 So.2d 919, 921 (Fla. 1st DCA 2005)). The judiciary cannot extend the terms of an unambiguous statute beyond its express terms or reasonable and obvious implications under Florida’s strict separation of powers delineated in article II, section three, of the Florida Constitution. See Davila v. State, 75 So.3d 192, 196 (Fla.2011). Even when the court determines the legislature intended something not expressed in the wording, the judiciary lacks the authority under organic law to depart from the plain meaning of an unambiguous statute. See Johnson v. Gulf Cnty., 26 So.3d 33, 41 (Fla. 1st DCA 2009) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 454 (Fla.1992)). Thus here, it must be presumed that the legislature intended to grant the power to issue waivers solely to “school districts” not individual “schools.”
This court is almost in full agreement that UNF does not qualify as a “school district” under section 790.115; therefore, UNF does not have the authority to waive itself out of the requirements of section 790.25, which gives Lainez the right to carry a securely encased firearm in her vehicle. Where we differ is in our consid *972 eration of the constitutional issue raised by the original panel.
II. The Dissent
The dissent implicitly concedes that statutory interpretation of section 790.115 would require reversal. However, the dissent bypasses any error in the trial court’s legal analysis of section 790.115(2)(a)3. and suggests affirmance under the authority granted to the UNF Board of Trustees by the board of governors under article IX, section 7. We respectfully disagree. Whatever the scope of authority granted to the universities under article IX, section 7, it does not encompass a university regulation that prohibits the carrying of a securely encased firearm within a vehicle parked in a university parking lot.

Section 790.33, Florida Statutes

The legislature’s primacy in firearms regulation derives directly from the Florida Constitution. Article I, Section 8(a), of the Florida Constitution provides:
The right of the people to keep and bear arms in defense of themselves and of the lawful authority of the state shall not be infringed, except that the manner of bearing arms may be regulated by law.
The phrase “by law” indicates that the regulation of the state right to keep and bear arms is assigned to the legislature and must be enacted by statute. Cf. Grapeland Heights Civic Ass’n v. City of Miami, 267 So.2d 321, 324 (Fla.1972) (considering the enactment clause language of article III, section 6, of the Florida Constitution and interpreting the constitutional term “law” in the phrase “authorized by law” to mean an enactment by the legislature not by a city commission or any other political body). Indeed, the legislature has reserved for itself the whole field of firearms regulation in section 790.33(1), which provides:
(1) Preemption. — Except as expressly provided by the State Constitution or general law, the Legislature hereby declares that it is occupying the whole field of regulation of firearms and ammunition, including the purchase, sale, transfer, taxation, manufacture, ownership, possession, storage, and transportation thereof, to the exclusion of all existing and future county, city, town, or municipal ordinances or any administrative regulations or rules adopted by local or state government relating thereto. Any such existing ordinances, rules, or regulations are hereby declared null and void.
Previously, this statute only explicitly preempted the regulation of firearms by local government. See Pelt v. State, Dept. of Transp., 664 So.2d 320, 321 (Fla. 1st DCA 1995), rev. denied, 671 So.2d 788 (Fla.1996). However, in October 2011, the legislature added the phrase “any administrative regulations or rules adopted by local or state government” to emphasize and reiterate that the regulation of firearms was solely within the purview of the legislature and not within the jurisdiction of local governments or agencies of the state government using their rulemaking power. See ch. 2011-109, § 1, Laws of Fla. “It is presumed that in adopting an amendment, the legislature intends to change the meaning of a statute unless a contrary intention is clearly expressed.” Equity Corp. Holdings, Inc. v. Dep’t of Banking & Fin., Div. of Fin., 772 So.2d 588, 590 (Fla. 1st DCA 2000). As such, we must interpret the statute to preempt the regulation of the right to bear arms from state governmental entities as well as local government. To rule otherwise and permit a state agency to enact rules or policies restricting the right to bear arms without a specific legislative delegation would render the 2011 amendment super *973 fluous.[1]
Evidence of the legislature’s intent to preempt the entire field of firearm regulation is located in subsection 790.33(4)(e), which provides that section 790.33(1) does not prohibit the Florida Fish and Wildlife Conservation Commission (FWCC) from regulating the use of firearms as a method of taking wildlife and from regulating shooting ranges. Like state universities, the FWCC derives its authority from the Florida Constitution. See Art. IV, § 9, Fla. Const. If, in implementing the exclusive constitutional authority to regulate firearms in section 790.33 the legislature did not intend to preempt such constitutional agencies in the first place, it would have been completely unnecessary to exempt the FWCC, a constitutional agency. In other words, subsection 790.33(4)(e) would be superfluous if the dissent’s analysis were correct. It follows logically then that section 790.33 must be read to preempt even those state agencies deriving their authority directly from the Florida Constitution. See Hechtman v. Nations Title Ins. of N.Y., 840 So.2d 993, 996 (Fla.2003) (“It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage.”).
Like the FWCC, state universities qualify as state agencies. See § 1001.705(l)(d), Fla. Stat. (2011) (defining a state university as an agency of the state that belongs to and is a part of the executive branch of state government). University boards of trustees are also part of the executive branch of state government. See § 1001.71(3), Fla. Stat. (2011). While universities may be excluded from the definition of an agency in regard to particular statutes, section 790.33 contains no such exclusion. Absent this specific exclusion in the statute at hand, universities must qualify as part of “state government.” The regulation adopted by UNF in this case qualifies as an administrative rule “adopted by local or state government,” which the legislature has expressly preempted. See § 790.33(1), Fla. Stat. (2011).

Article IX, Section 7

The dissent suggests affirmance under the tipsy coachman doctrine and posits that state universities have the independent authority under article IX, section 7, to implement the regulation at issue even in the face of a statutory provision that provides otherwise. The dissent interprets the scope of the university’s authority broadly enough to encompass the regulation at issue, which it characterizes as merely regulating the conduct of students exercising the privilege to enroll in UNF. Interpreting the board of governors’ authority in article IX, section 7, so broadly in this instance conflicts with the right to keep and bear arms in article I, section 8(a). Thus, we must interpret the scope of authority in article IX, section 7, in a manner that gives effect to both provisions. See Askew v. Game & Fresh Water Fish Comm’n, 336 So.2d 556, 560 (Fla.1976) (recognizing that constitutional provisions should be considered in light of the Constitution as a whole, thus favoring an interpretation that gives effect to every part).
An inquiry into the scope of the board of governors’ authority must first begin with an examination of the actual *974 language of the constitutional provision. See Caribbean Conservation Corp. v. Fla. Fish & Wildlife Conservation Comm’n, 838 So.2d 492, 501 (Fla.2003) (quoting Fla. Soc’y of Ophthalmology v. Fla. Optometric Ass'n, 489 So.2d 1118, 1119 (Fla.1986)). This court endeavors to construe constitutional provisions consistent with the intent of the framers and the voters. Id.
In November 2002, the voters approved Amendment 11, which had been proposed by initiative petition. The amendment created article IX, section 7, and established the board of governors of the state university system as a corporate body that “shall operate, regulate, control, and be fully responsible for the management of the whole university system.” Art. IX, § 7(d), Fla. Const. The board’s responsibilities include, but are not limited to:
[D]efining the distinctive mission of each constituent university and its articulation with free public schools and community colleges, ensuring the well-planned coordination and operation of the system, and avoiding wasteful duplication of facilities or programs.

Id.

Section 7(d) also provides that the board’s “management shall be subject to the powers of the legislature to appropriate for the expenditure of funds, and the board shall account for such expenditures as provided by law.” Id.
The scope of the board’s authority has been interpreted in various decisions from this court and the supreme court. While these decisions have interpreted the board’s scope of authority broadly, it is notable that the areas at issue all concerned matters directly related to education. See Fla. Pub. Employees Council 79, AFSCME, AFL-CIO v. Pub. Employees Relations Comm’n, 871 So.2d 270 (Fla. 1st DCA 2004) (personnel); NAACP, Inc. v. Fla. Bd. of Regents, 876 So.2d 636 (Fla. 1st DCA 2004) (admission criteria); Decker v. Univ. of W. Fla., 85 So.3d 571 (Fla. 1st DCA 2012) (student discipline sanctions for cheating). Most recently in Graham v. Haridopolos, 75 So.3d 315 (Fla. 1st DCA 2011), this court determined that the board’s authority did not include the power to set and appropriate tuition and fees. That decision was affirmed by the supreme court in Graham v. Haridopolos, 108 So.3d 597, 604 (Fla.2013), which recognized that the language of article IX, section 7, did not plainly transfer to the board the legislature’s control over tuition and fees, but instead granted the board the responsibility to “operate,” “regulate,” “control,” and “be fully responsible for the management of the whole university system.” Employing the canon of construction esjusdem generis to construe the meaning of “operate, regulate, control, and be fully responsible for the management of the whole university system,” the supreme court reasoned that the listed responsibilities in article IX, section 7, included responsibilities that were “executive and administrative in nature.” Id. at 605. The supreme court determined that the ability to set and appropriate for the expenditure of tuition and fees was of a wholly different nature and, therefore, was not included with the meaning of the authority vested in article IX, section 7(d). Id.
While the Haridopolos decisions were based, in part, on the express language in article IX, section 7(d), the discussion of the board’s scope of authority is instructive here. We likewise interpret the board’s authority in article IX, section 7, to encompass responsibilities that are “executive and administrative” in nature. See id. Regulating a citizen’s right to keep and bear arms is of a wholly different nature. Thus, we respectfully disagree with the dissent’s argument that the constitutional language in article IX, section 7, *975 contemplated giving the board (and therefore UNF) plenary authority to enact the regulation at issue, which would deprive students attending UNF of their constitutional right to bear arms as provided by organic law and legislative enactment.
Furthermore, in our view, reading the grant of authority in article IX, section 7, to allow the university to regulate the lawful possession of firearms would have caused this amendment to fail its ballot title and summary review in the supreme court pursuant to section 101.161, Florida Statutes, and article V, section 3(b)(10), of the Florida Constitution. The ballot title and summary to Amendment 11 presented to the voters at the 2002 general election read:
Ballot title: Local trustees and statewide governing board to manage Florida’s university system.
Ballot summary: A local board of trustees shall administer each state university. Each board shall have thirteen members dedicated to excellence in teaching, research, and service to community. A statewide governing board of seventeen members shall be responsible for the coordinated and accountable operation of the whole university system. Wasteful duplication of facilities or programs is to be avoided. Provides procedures for selection and confirmation of board members, including one student and one faculty representative per board.
In re Advisory Op. to the Atty. Gen. ex rel. Local Trs., 819 So.2d 725, 727-28 (Fla.2002).
In its review of this ballot title and summary, the supreme court held that the proposed amendment did “not substantially affect or alter any [other] provision in the state constitution.” Id. at 732. If a constitutional amendment by initiative seeks to “amend multiple sections of the constitution ... [it] should identify the articles or sections of the constitution substantially affected.” Fine v. Firestone, 448 So.2d 984, 989 (Fla.1984). There was nothing in either the text of Amendment 11 or the ballot title or summary to indicate in any way that the amendment to article IX, section 7, would give the board of governors the authority to override the provisions of article I, section 8, providing that the legislature alone has the authority to regulate the manner of bearing arms. Had it done so, the public would have been alerted that Amendment 11 could have diminished the people’s fundamental right to bear arms, a right that has been zealously guarded and protected, as noted by Judge Makar in his concurrence. In essence, to adopt the dissent’s view we would allow Amendment 11 to “fly under false colors.” See Armstrong v. Harris, 773 So.2d 7, 16-18 (Fla.2000).
The dissent maintains that the regulation at issue is a condition on the exercise of a “privilege” rather than a restriction on a fundamental constitutional right. Its analysis thus characterizes the regulation at issue as noncriminal. However, by waiving the secure encasement exception under section 790.115, the regulation here purports to subject a person with a firearm securely encased in his or her vehicle to a potential third-degree felony charge for a violation. See § 790.115(2)(c)l., Fla. Stat. (2011).
The dissent also argues that the university has the power to regulate otherwise lawful activities in the context of student conduct, i.e., consuming alcohol in a classroom or smoking in a dorm room. While true in certain contexts, restricting recreational activities is a far cry from restricting a fundamental, constitutional right to keep and bear arms for self-defense. We recognize that section 1001.706(7)(b), Florida Statutes (2011), gives the board of gov *976 ernors the authority to restrict the use of firearms, food, tobacco, and alcoholic beverages, among other things. However, this provision must be read in pari matea-ría with section 790.115. If the issue in this case involved the right of a student to carry a firearm in the classroom or at a sporting event, our analysis would be different. There are certain places where firearms can be legally prohibited, but the legislature has recognized that a citizen who is going to be in one of these places should be able to keep a firearm securely encased within his or her vehicle.
In regulating the manner of bearing arms, the legislature has attempted to balance this fundamental right with the safety of Florida citizens. This balance can be seen in the “guns-at-work” statute, section 790.251, Florida Statutes (2011),[2] which provides, in part,
(3) Legislative intent; findings. — This act is intended to codify the long-standing legislative policy of the state that individual citizens have a constitutional right to keep and bear arms, that they have a constitutional right to possess and keep legally owned firearms within their motor vehicles for self-defense and other lawful purposes, and that these rights are not abrogated by virtue of a citizen becoming a customer, employee, or. invitee of a business entity. It is the finding of'the Legislature that a citizen’s lawful possession, transportation, and secure keeping of firearms and ammunition within his or her motor vehicle is essential to the exercise of the fundamental constitutional right to keep and bear arms and the constitutional right of self-defense. The Legislature finds that protecting and preserving these rights is essential to the exercise of freedom and individual responsibility. The Legislature further finds that no citizen can or should be required to waive or abrogate his or her right to possess and securely keep firearms and ammunition locked within his or her motor vehicle by virtue of becoming a customer, employee, or invitee of any employer or business establishment within the state, unless specifically required by state or federal law.
Section 790.115 strikes a similar balance when it prohibits firearms from school property except when securely encased within a vehicle pursuant to section 790.25(5).
III. The Concurrences
All of the concurring judges agree with the interpretation of section 790.115 above. Understandably, some of the concurring judges are wary of weighing in on the constitutional issue raised by the dissent. However, a concurrence that does not address the constitutional arguments put forth by the dissent results in an implicit ruling that the authority of the board of governors is not as expansive as the dissent reads it in article IX, section 7.
The procedural posture of this case requires that this court address the constitutional issue. The original panel asked the parties to be prepared to speak on the application of article IX, section 7, in oral argument and then required briefing on the issue. The dissent is entitled to make *977 a “tipsy coachman” argument in order to affirm. If the dissent were correct that article IX, section 7, gives the board of governors independent authority to regulate securely encased firearms within vehicles despite a statute requiring a contrary result, then neither section 1001.706(7)(b), Florida Statutes, nor the provisions of chapter 120 governing how agencies receive their rule-making authority would limit the board of governors and the board of trustees. See In re Advisory Op. of the Governor, 334 So.2d 561 (Fla.1976). The board of governors has, after all, delegated the responsibility for “campus safety” to the various boards of trustees.[3] Such a delegation would be a sufficient grant of power to enact the regulation at issue, which clearly relates to campus safety, regardless of whether one believes disarming students actually makes university campuses more or less safe. Furthermore, any argument that UNF’s regulation fails because it did not have authority delegated by the board of governors constitutes a “tipsy coachman” reversal — a jurisprudential device unknown in the law. See Advanced Chiropractic & Rehab. Ctr. Corp. v. United Auto. Ins. Co., 103 So.3d 866, 869 (Fla. 4th DCA 2012) (citing State v. Baez, 894 So.2d 115, 121 (Fla.2004) (Pariente, C.J., dissenting)).
IV. Conclusion
In conclusion, the trial court incorrectly construed the meaning of “school district” in section 790.115. While school districts may adopt a waiver disallowing securely encased firearms in vehicles parked on campuses under their authority, neither UNF nor the UNF Board of Trustees qualifies as a school district under section 790.115(2)(a)3. The legislature has preempted UNF from independently regulating firearms. As such, section 14.0080P of the UNF policies and regulations, to the extent it prohibits possession of securely encased firearms in motor vehicles, is illegal and unenforceable. For these reasons, we reverse and remand for disposition consistent with this opinion.
REVERSED and REMANDED.
LEWIS, C.J., WOLF, BENTON, THOMAS, ROWE, SWANSON, and MAKAR, JJ., concur.
BENTON, J., concurs in an opinion in which WOLF, J., joins.
"WETHERELL, J., concurs in an opinion in which MARSTILLER, RAY, and OSTERHAUS, JJ., join.
SWANSON, J., concurs with opinion.
MAKAR, J., concurs in an opinion in which OSTERHAUS, J., joins in PART II.
OSTERHAUS, J., concurs in an opinion in which WETHERELL, MARSTILLER, RAY, and MAKAR, JJ., join.
PADOVANO, J., dissents in an opinion in which VAN NORTWICK, and CLARK, JJ., join.

. Whether the legislature has the authority to delegate, in part, the exclusive authority to enact regulations regarding the right to keep and bear arms was not argued in this case, and we need not consider it to decide this case.

. In Florida Retail Federation v. Attorney General of Florida, 576 F.Supp.2d 1301, 1302 (N.D.Fla.2008), the Northern District held section 790.251 unconstitutional in part because the court found it irrationally compelled some businesses, but not others, to allow a customer to secure a gun in a vehicle. However, the opinion recognized that the state may compel a business to allow a gun to be secured in a vehicle in a parking lot and upheld the statute to the extent it compelled a business to allow a worker with a concealed weapons permit to secure a gun in a vehicle in a parking lot. Thus, the legislative intent contained within the statute remains relevant for our purposes here.

. Board of Governors Regulation 1.001(3)(Z) provides that the university boards of trustees are responsible for "campus safety and emergency preparedness, to include safety and security measures for university personnel, students, and campus visitors.”