LEWIS, J.
Appellant, Florida Carry, Inc., appeals the trial court’s “Order Partially Granting and Partially Denying Motion to Dismiss; Summary Judgment of Dismissal of Motor Vehicle Claims; and Summary Judgment for Defendants on Housing Claims.” Appellant raises three issues on appeal: (1) the trial court erred in granting summary judgment in favor of Appellees, the University of Florida (“UF”) and Bernie Ma-chen, UF’s President at the time Appellant’s lawsuit was filed, on the basis that Appellees are not violating Florida law by prohibiting the possession of firearms in housing located on university property; (2) the trial court erred in granting summary judgment in Appellees’ favor on the basis that there was no actual case or controversy in need of adjudication with respect to Appellant’s claim that UF’s policies as to the'possession of firearms in vehicles located on university property violated our opinion in Florida Carry, Inc. v. University of North Florida, 133 So.3d 966 (Fla. 1st DCA 2013) (eri banc) (“UNF decision”)[1]; and (3) the trial court erred in granting in part Appellee Machen’s motion to dismiss on the basis that Appellee Ma-chen is immune from liability for damages pursuant to sections 768.28(9)(a) and 790.33, Florida Statutes (2013). As for the second issue, we agree with the trial court’s determination that no case or controversy existed with respect to Appellant’s motor vehicle claim as there was no evidence that UF attempted to enforce or enact any policy or regulation contrary to our interpretation of law in the UNF decision, ; but instead added language to its regulation concerning firearms on campus, stating that.UF would comply with Florida law governing firearms in vehicles. We, therefore, affirm as to that issue without further , comment. For the following reasons, we also reject Appellant’s first and third arguments and affirm as to those issues as, well.

Factual History

On January 10, 2014, Appellant, a nonprofit corporation whose members “seek to *140 protect and exercise their- right to keep and bear arms,” filed a Complaint against Appellees, challenging UF’s prohibition of firearms in university housing and certain policies which, according to Appellant, prohibited firearms in vehicles parked on UF’s property. On February 21, 2014, Appellant filed a First Amended Complaint against Appellees, alleging . five counts. In Count I, Appellant alleged that UF violated section 790.33, Florida Statutes, in which the Legislature declared its occupation of the “whole field of regulation of firearms and ammunition” in Florida. Appellant further alleged, that the Florida Constitution reserves to the Legislature the exclusive authority to regulate the manner of bearing arms, that UF had passed rules or regulations expressly prohibited by section 790.33, that section 790.25(3)(n), Florida Statutes (2013), provides that a person may possess a firearm in his or her home or place of business, and that section 790.115, Florida Statutes (2013), which prohibits firearms on school property with certain exceptions, is in conflict 'with section 790.25(3)(n). Appellant sought an award of damages, an injunction against the enforcement of any firearms rules or regulations by UF other than those contained in chapter 790, an order to remove any university rule or regulation regarding firearms from any university publication except as specifically provided for employees by chapter 790, an order repealing all preempted and unauthorized Florida Administrative Code regulations regarding the possession of firearms on campus, and attorney’s fees and costs.
In Count II, Appellant asserted á violation of section 790.33 by Appellee Machen, alleging that Machen, as the chief administrative officer of UF, passed, authorized, and/or allowed the passage of rules or regulations expressly prohibited by section 790.33. Appellant sought essentially the same relief as it sought in Count I.
In Count III, Appellant sought a declaratory judgment, alleging that UF’s rules, regulations, and/or policies that prohibit the possession of arms in university housing “negate[d] the very purpose of the Constitutional right guaranteed by Florida’s Constitution.” Appellant further alleged that nothing in the Florida Constitution or the laws enacted by the Legislature regarding the manner of bearing arms allows a state agency to prohibit .the possession of arms in a person’s home. Appellant requested that the trial court find that UF’s rules, policies, and regulations violated the constitutional rights of persons living in UF-owned housing, declare that' UF’s rules, policies, and regulations were unconstitutional, and require the repeal of all rules, policies, and regulations prohibiting arms or rendering them useless for purposes of self-defense.
In Count IV, Appellant sought a declaratory judgment, requesting a ruling that UF’s rules and regulations, authorized and/or allowed by Appellee Machen, regarding firearms and weapons were expressly and impliedly preempted. Appellant further requested in part an order finding that UF’s rules and regulations regarding firearms were null and void and that persons residing in UF-owned housing had thé'right to possess, carry, and store firearms and weapons without the threat of criminal prosecution or administrative punishment.
' In Count V, Appellant sought an injunction and writ of mandamus; It alleged that the “Constitution and the laws of the state of Florida, protect the rights of the people to keep and bear operable- arms within their homes, regardless of ownership by a public entity.” Appellant again sought the repeal of “enjoined rules and regulations.”
*141 Appellees subsequently moved for summary judgment. As to Appellant’s housing claim, Appellees relied upon section 790.115, Florida Statutes, and the Legislature’s prohibition of firearms on school grounds. Appellee Machen also filed a motion to dismiss, arguing that he was immune from suit pursuant to section 768.28, Florida Statutes. During the hearing on the motions, Appellees’ counsel argued that although Appellant cited District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), a United States Supreme Court case addressing a firearm prohibition in homes, in its memorandum filed in opposition to the summary judgment motion, it had not alleged a Second Amendment violation under the United States Constitution. While noting that Appellees were not disputing “whether or not campus housing includes a home within the meaning” of section 790.25(3)(n), Appellees’ counsel argued that section 790.115 governed the issue at hand and clearly prohibited firearms anywhere on school property with the limited exceptions set forth in the statute.
In the order at issue on appeal, the trial court first addressed Appellee Machen’s motion to dismiss and concluded that Ma-chen was immune from Appellant’s damages claim under section 768.28(9)(a), Florida Statutes. It further determined that section 790.33 would not alter Machen’s immunity from a damages claim since “it only permits limited damages claims against the agency itself, not against the agency head.” As for whether Machen had immunity from a claim for civil fines under section 790.33, the trial court determined that that issue was not ripe for determination because a proper claim for such damages had not been made. It concluded that neither section 768.28 nor organic law provided Machen with immunity from declaratory and injunctive relief.
As for Appellant’s claim that UF’s policies and regulations pertaining to firearms in vehicles parked on university property violated our interpretation of the law as set forth in the UNF decision, the trial court found that there existed no actual case or controversy in need of adjudication and granted summary judgment in favor of Appellees. As for Appellant’s claim that UF’s prohibition of firearms in university housing violated Florida law, the trial court recognized that the issue raised the interplay between sections 790.25(3)(n) and 790.115, Florida Statutes. The trial court set forth in part:
It is [] argued that a dormitory or residence hall is in essence a home for students, and the University is, therefore, not authorized to prohibit students from having firearms in residence hall rooms on university property without violating their right to bear arms at home. Plaintiff acknowledges that § 790.115 prohibits firearms on university property, but contends that the right to have a firearm at home supersedes this prohibition.
Defendants argue the opposite conclusion, that is, the prohibition against firearms on campus governs even if a residence hall room is considered a home. It is difficult to argue with Plaintiffs characterization of a residence hall room as a type of home, and Defendants do not take issue with this characterization in their motion for summary judgment. However, the Court finds Defendants’ arguments persuasive with respect to how the subject statutes should be reconciled. The Section 790.115(2)(a) prohibition against firearms on school property includes university property as recognized by Florida Carry/UNF. But, unlike the right to have a firearm in a vehicle, the legislature’s recognition of a person’s right to possess a firearm in a home does not *142 extend to a residence hall on a university campus. There is no exception in § 790.115(2) for a residence hall like there is for a vehicle. The distinction in treatment between vehicles and residence halls indicates that the legislature did not intend to make an exception for residence halls. In the context of the issues raised 'in this case, Defendants’ regulation doesn’t- violate preemption by stating that firearms are not permitted on campus; but simply recognizes what the legislature has enacted. Thus, Defendants are entitled to summary judgment with respect to Plaintiffs claim that Defendants are violating Florida law by ‘ prohibiting the possession of firearms in housing located on university property.
Appellant moved for reconsideration and rehearing. In its Order Denying Plaintiffs Motions for Rehearing and Reconsideration with Clarification, the trial court set forth in part that its order on summary judgment:
is hereby clarified with respect to the “housing claims” to add that the summary judgment in favor of the Defendants resolves Plaintiffs claims based on ,the Florida Constitution, as well as Florida statutory law, to the extent such are raised in Plaintiffs amended complaint. No distinct claims under the United States Constitution were raised in Plaintiffs amended complaint. Thus, the summary judgment entered in favor of Defendants with respect to Plaintiffs “housing claims” includes Count III.
This appeal followed.

Standard of Review

Summary judgment is proper when there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So,2d 126, 130 (Fla.2000). Summary judgment is reviewed de novo.. Id. Statutory construction is a question of law also subject to de novo review. W. Fla. Reg’l Med. Ctr., Inc. v. See, 79 So.3d 1, 8 (Fla.2012); Randazzo, v. Fayer, 120 So.3d 164, 165 (Fla. 1st DCA 2013). The Florida Supreme Court has instructed that “[w]here possible,- it is the duty of the courts to adopt that construction of a statutory provision which harmonizes and reconciles it with other provisions of the same act.” Knowles v. Beverly Enters. Fla., Inc., 898 So,2d 1, 8 (Fla.2004) (citing Woodgate Dev. Corp. v. Hamilton Inv. Tr., 351 So.2d 14, 16 (Fla.1977)).

Prohibition of Firearms in University Housing

Appellant first argues that the tidal court erred in granting summary judgment in Appellees’ favor as to its claim that UF’s prohibition of firearms in university housing violates the Legislature’s preemption of the field of regulation of firearms and ammunition as set forth in section 790.33, Florida Statutes. That statute provides in part:
(1) PREEMPTION. — Except as expressly provided by the State Constitution or general law, the Legislature hereby declares that it is occupying the whole field of regulation of firearms and ammunition, including the purchase, sale, transfer, taxation, manufacture, ownership, possession, storagé, and transportation thereof, to the exclusion of all existing and future county, city, town, or municipal ordinances or any administrative regulations or rules adopted by local or state government relating thereto. Any such existing ordinances, rules, or regulations are hereby declared null and void.
(2) POLICY AND INTENT.—
*143 (a) It is the intent of this section to provide uniform firearms laws in the state; to declare all ordinances and regulations null and void which have been enacted by any jurisdictions other than state and federal, which regulate firearms, ammunition, or components thereof; to prohibit the enactment of any future ordinances or regulations relating to firearms, ammunition, or components thereof unless specifically authorized by this section or general law; and to require local jurisdictions to enforce state firearms laws.
(b) It is further the intent, of this section to deter and prevent the violation of this section and the violation of rights protected under the constitution and laws of this state related to firearms, ammunition, or components thereof, by the abuse of official authority that occurs when enactments are passed in violation of state law or under color of local or state authority.
§ 790.33(1), (2), Fla. Stat. (2013).
Article I, Section 8(a) of the Florida Constitution provides, “The right of the people to keep and bear arms in defense of themselves and of the lawful authority of the state shall not be infringed, except that the manner of bearing arms may be regulated by law.” As ye have explained, “The phrase ‘by law’ indicates that the regulation of the state right to keep and bear arms is assigned to the legislature and must be enacted by statute.” Fla. Carry, Inc., 133 So.3d at 972. This first issue involves the alleged conflict between section 790.25(3)(n) and section 790,115(2)(a), Florida Statutes.
Section 790.25,, Florida Statutes (2013), which is entitled, “Lawful ownership, possession, and use of firearms and other weapons,” provides in part as follows:
(1) DECLARATION OF POLICY.— The Legislature finds as a matter of public policy and fact that it is necessary to promote firearms safety and to curb and prevent the use of firearms and other-weapons in crime and by incompetent persons without prohibiting the lawful use in defense of life, home, and property, and the use by United States or state military organizations, and as otherwise now authorized by law, including the right to use and own firearms for target practice and marksmanship on target practice ranges or other lawful places, and lawful hunting and other lawful purposes.
(2) USES NOT AUTHORIZED.—
(a) This section does not authorize carrying a concealed weapon without a permit, as prohibited by ss. 790.01 and 790.02.
(b) The protections of this section do not apply to the following: 1. A person who has been adjudged mentally incompetent, who is addicted to the use of narcotics or any similar drug, or who is a habitual or chronic alcoholic, or a person using weapons or firearms in violation of ss. 790.07-790.115, 790.145-790.19, 790.22-790.24;
[[Image here]]
(3) LAWFUL USES. — The provisions of ss.' 790.053 and 790.06 do not apply in the following instances, and, despite such sections, it is lawful for the following persons to own, possess, and lawfully use firearms and other weapons, ammunition, and supplies for lawful purposes:
[[Image here]]
(n) A person possessing arms at his or her home or place of business;
[[Image here]]
(4) CONSTRUCTION. — This act shall be liberally construed to carry out the declaration of policy herein and in favor of the constitutional right to keep and bear arms for lawful pur *144 poses. This act is supplemental and additional to existing rights to bear arms now guaranteed by law and decisions of the courts of Florida, and nothing herein shall impair or diminish any of such rights. This act shall supersede any law, ordinance, or regulation in conflict herewith.
(5) POSSESSION IN PRIVATE CONVEYANCE. — Notwithstanding subsection (2), it is lawful and is not a violation of s. 790.01 for a person 18 years of age or older to possess a concealed firearm or other weapon for self-defense or other lawful purpose within the interior of a private conveyance, without a license, if the firearm or other weapon is securely encased or is otherwise not readily accessible for immediate use....
(Emphasis added). The statute was enacted in 1965. See Ch. 65-410, § 1, Laws of Fla.
Section 790.115, Florida Statutes (2013), which is entitled “Possessing or discharging weapons or firearms at a school-sponsored event or on school property prohibited; penalties; exceptions,” provides in part as follows:
(2)(a) A person shall not possess any firearm, electric weapon or device, destructive device, or other weapon as defined in s. 790.001(13), including a razor blade or box cutter, except as authorized in support of school-sanctioned activities, at a school-sponsored event or on the property of any school, school bus, or school bus stop; however, a person may carry a firearm:
1.In a case to a firearms program, class or function which has been approved in advance by the principal or chief administrative officer of the school as a program or class to which firearms could be carried;
2. In a case to a career center having a firearms training range; or
3. In a vehicle pursuant to s. 790.25(5); except that school districts may adopt written and'published policies that waive the exception in this subparagraph for purposes of student and campus parking privileges.
For the purposes of this section, “school” means any preschool, elementary school, middle school, junior high school, secondary school, career center, or postsecondary school, whether public or nonpublic.
(Emphasis added). The statute was enacted in 1992. See 92-130, § 4, Laws of Fla.
In attempting to reconcile section 790.25(3)(n) with section 790.115(2)(a), we are guided by the fact that the Legislature, based upon the plain language of section 790.115(2)(a), clearly intended to make it unlawful for individuals to possess firearms and other weapons “on the property of any school,” including “postsecond-ary school[s], whether public or nonpublic.” In enacting section 790.115 twenty-seven years after the enactment of section 790.25, the Legislature chose to include in subsection (2)(a) three exceptions to the prohibition on firearms on campus, thereby permitting the carrying of firearms in a case to a firearms program, class or function, in a case to a career center having a firearms training range, or in a vehicle. It is significant to our conclusion in this case that the Legislature cited and relied upon section 790.25(5), the provision allowing for firearms in private conveyances, in section 790.115(2)(a)3. when it made an exception for vehicles on school property. Had the Legislature viewed section 790.25 as preempting section 790.115 based on the “supersede” language in section 790.25(4), the exception as to vehicles in section 790.115 would have been unnecessary. More significant is the fact that the Legis *145 lature made no such exception for university housing in section 790.115. Had the Legislature wished to do so, it could have included a subparagraph 4 with language such as “in student housing pursuant to section 790.25(3)(n).” The fact that it did not do so supports the trial court’s ruling and Appellees’ position as to this issue. Under Appellant’s interpretation, the Legislature intended, without specifically stating so, to prohibit firearms on school property except for any place that might be considered a student’s home while on school property. Reaching that result, however, requires a strained interpretation of the statutes involved.
Another important consideration in this case is that the Legislature amended section 790.25 in 2006. Prior to 2006, the statute listed under “[u]ses not authorized” “a person using weapons or firearms in violation of ss. 790.07-790.12, 790.14-790. 19., 790.22-790.24.” In 2006, the Legislature deleted the reference to sections 790.07-790.12 and 790.14-790.19 and added the reference to sections 790.07-790.115 and sections 790.145-790.19. See Ch. 06-103, § 2, Laws of Fla. (emphasis added). Thus, while section 790.25(3)(n) provides that possession of firearms in a home is a lawful use, the statute also now provides that possession of firearms on school property is not authorized. While Appellant is correct that the primary basis for the amendment was to address the prohibition on carrying firearms in national forests, the fact remains that section 790.115 was specifieally included under the section detailing unauthorized uses.[2]
Our conclusion as to this.issue is further buttressed by our UNF decision, where, in an en banc opinion, we held that a state university may not prohibit the carrying of a securely encased firearm within a motor vehicle that is parked in university campus parking. See Fla. Carry, Inc., 133 So.3d at 968. In reaching this decision, we relied upon the exception provided for in section 790.115(2)(a)3, and we concluded that a college is not a “school district” as that term is used in the exception. Id. at 970. The majority opinion reasoned in part:
If the issue in this ■ case involved the right of a student to carry a firearm in the classroom or at a sporting event, our analysis would be different. There are certain places where firearms can be legally prohibited, but the legislature has recognized that a citizen who is going to be in one of these places should be able to keep a firearm securely encased within his or her vehicle.
Id. at' 975-76. Here, as stated, the Legislature made no exception in section 790.115 pertaining to university housing. The majority in the UNF decision also recognized that section 1001.706(7)(b), Florida Statutes, gives the board of governors “the authority to restrict the use of firearms, food, tobacco, and alcoholic bev *146 erages, among other things.”[3] Id.. After noting that the board of governors has, delegated the responsibility for “campus safety” to the various boards of trustees, the majority explained that “[s]uch a delegation would be a sufficient grant of power to enact the regulation at issue, which clearly relates to campus safety, regardless of whether one believes disarming students actually makes university campuses more or less safe.” Id, at 977. UF’s rules and regulations prohibiting firearms in university housing, which are not in conflict with the statutes at issue or the Florida Constitution, also clearly relate to campus safety.
Appellant argues that we must reconcile sections 790.25(3)(n) and 790.115(2)(a) by concluding that section 790.25(3)(n) controls the issue of whether individuals in university housing may possess firearms based upon ,the language contained in section 790.25(4) that “[t]his act shall supersede any law, ordinance, or regulation in conflict herewith.” We reject Appellant’s argument for two reasons. First, section 790.25 was enacted in 1965, and we find no indication in the statute or other authority that the Legislature, at that time, intended to make it lawful for those living in university housing to possess firearms therein. To the extent that the Legislature at that time did intend to include university housing within the definition of “home,” “[a] legislature may not bind the hands of future legislatures by prohibiting amendments to statutory law.” Neu v. Miami Herald Publ’g Co., 462 So.2d 821, 824 (Fla.1985); see also Scott v. Williams, 107 So.3d 379, 389 (Fla.2013) (holding that the preservation of rights statute, which provided in part that “[ajs of. July 1, 1974, the rights of members of the retirement system established by this chapter are declared to be of a contractual nature, entered into between the member and- the state, and - such rights shall be legally enforceable as valid contract rights and shall not be abridged in any way,” was not intended to bind future legislatures from prospectively altering benefits for future. service performed by all members of the FRS); R.J. Reynolds Tobacco Co. v. Townsend, 160 So.3d 570, 575 (Fla. 1st DCA 2015) (“[T]he default rule is in accord with the principle that one legislature cannot bind thp hands of a future legislature.”). Moreover, it is well-established that when reconciling statutes that may appear to conflict, “a more recently enacted statute will control over older statutes.” Fla. Virtual Sch. v. K12, Inc., 148 So.3d 97, 102 (Fla.2014). “‘The more recently enacted provision may be viewed as the clearest and most recent expression of legislative , intent.’ ” Id. (citation omitted). As we stated, section 790.115(2)(a), the later-enacted statute in this case, clearly prohibits firearms on university property and makes no exception for firearms in university housing.
While the crux of Appellant’s First Amended Complaint was its argument that *147 UF’s prohibition; against firearms in university housing violated the Legislature’s preemption of the field of firearms, it also contended below that the prohibition is in conflict with the United States. Supreme Court’s opinion in District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), where the Court addressed whether a District of Columbia prohibition on the possession of usable handguns in the home violated the Second Amendment to the United States Constitution, which provides that “[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.” The Court, held that the ban on handgun possession in the home violated the Second Amendment as did its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense. Id. at 635, 128 S.Ct. 2783; see also McDonald v. City of Chicago, Ill., 561 U.S. 742/ 750, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (holding that the Second Amendment right as expressed in Heller is fully applicable to the states).
We find Appellant’s reliance upon Heller to be misplaced given that the Court wrote in part:
Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and’ for whatever purpose. ... Although we do’ not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by félons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.
Id. at 626-27, 128 S.Ct. 2783 (emphasis added). The Court repeated its “assurance” that Heller did not cast doubt on these types of laws in McDonald. See 561 U.S. at 786, 130 S.Ct. 3020. It is noteworthy that a Virginia regulation, 8 VAC 35-60-2Ó, provides in part that “[possession or carrying of any weapon by any person, except a police officer, is prohibited on university property in academic buildings, administrative office buildings, student residence buildings, dining facilities, or while attending sporting, entertainment or educational events.” (Emphasis added). The Virginia Supreme Court held that the regulation' did not violate'either the state or federal’ Constitutions and-relied upon the Supreme Court’s statement in Heller that the opinion did not cast doubt on laws forbidding the carrying of firearms in sensitive places such as schools. See DiGiacinto v. Rector & Visitors of George Mason Univ., 281 Va. 127, 704 S.E.2d 365, 367 (2011). Based upon such, we find Appellant’s reliance upon Heller to be misplaced.
■ Appellant also makes the argument that “[u]nder the current law,” students who pay for their, home are given less constitutional- protections than persons who receive subsidized housing at taxpayer expense. Appellant cites Doe v. Wilmington Housing Authority, 88 A.3d 654, 657 (Del.2014), where the Delaware Supreme Court answered' in the negative the certified questions of (1) whether, under the Delaware Constitution, a public housing agency such as the Wilmington Housing Authority may adopt'a policy-prohibiting its residents, household members, and guests from displaying or carrying a firearm or other weapon in a common area except when the firearm or other weapon is being transported to or from a resident’s housing *148 unit or is being used in self-defense and (2) whether, under the Delaware Constitution, a public housing agency may require its residents, household members, and guests to have available for inspection a copy of any permit, license, or other, documentation required by law for the ownership, possession, or transportation of any firearm or weapon where there is reasonable cause to believe that the law or policies have been violated. .
The problem with Appellant’s reliance upon Doe is that its fairness-type argument in relation to Doe is the type that should be made to the Legislature, not to a court. While the Legislature may choose to one day amend the current law to permit firearms in university housing, our interpretation of the pertinent statutes leads us to the conclusion that it has not yet done so. To read section 790.25(3)(n) to include university housing would, in our opinion, result in an improper ‘judicially-created exception to section 790.115. We, therefore, affirm the trial court’s summary judgment entered in favor of Appellees as to Appellant’s housing claim based upon our conclusion that UF’s policy prohibiting firearms in university housing is authorized by law and does not violate section 790.33 or the Florida Constitution. In doing so, we reject Judge Makar’s opinion that there is. a lack of a clear, justiciable controversy in this case. As correctly recognized by Judge Osterhaus, the primary issue before us relating to the housing claim is Appellant’s contention that UF’s prohibition of firearms in university housing violates the Legislature’s preemption of the field of firearms regulation. This issue can and should be addressed in this appeal notwithstanding the fact that we are unaware of Appellant’s members’ specific housing situations.

Appellee Machen’s Immunity from Suit

In its third and final issue, Appellant contends that the trial court erred in granting in part Appellee Machen’s motion to dismiss. In ruling on a motion to dismiss, a- trial court must accept as true all well-pled allegations and limit its consideration of facts to the four corners of the complaint. Medberry v. McCallister, 937 So.2d 808, 813 (Fla. 1st DCA 2006). Appellate courts “operate under the same standard and constraints in reviewing a dismissal order.” Id. An order granting a motion to dismiss is reviewable on appeal de novo. Randazzo, 120 So.3d at 165.
In granting Appellee Machen’s motion, the trial court accepted Machen’s argument that he was immune from Appellant’s suit by virtue of section 768.28, which is entitled “Waiver of sovereign immunity in tort actions; recovery limits; limitation on attorney fees; statute of limitations; exclusions; indemnification; risk management programs” and provides in part:
(1) In.accordance with s. 13, Art. X of .the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee’s office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act....
(2) As used in this act, “state agencies or subdivisions” include the executive *149 departments, the Legislature, the judicial branch (including public defenders), and the independent establishments of the state, including state university boards of trustees; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities, including the Florida Space Authority.
[[Image here]]
(9)(a) No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. However, such officer, employee, or agent shall be considered an adverse witness in a tort action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function
(Emphasis added).
We agree with Appellant that the trial court erred in granting the motion to dismiss on the basis of section 768.28(9)(a). As the supreme court has set forth, “[S]eetion 768.28 ... applies only when, the governmental entity is being sued in tort.” Provident Mgmt. Corp. v. City of Treasure Island, 796 So.2d 481, 486 (Fla.2001); see also Doe ex rel. Doe’s Mother v. Sinrod, 90 So.3d 862, 854 (Fla. 4th DCA 2012) (“[Section 768.28 applies to negligent torts committed by' the state or one of its agencies.”); M.S. v. Nova Se. Univ., Inc., 881 So.2d 614, 617 (Fla. 4th DCA 2004) (“Section 768.28 sets out the-waiver of sovereign immunity in tort actions and the relevant limitations on damages”). While the trial court relied upon the language “or named as a party defendant in any action for any injury or damage” in reaching its conclusion, that provision does not extend the immunity provided in the statute to non-tort actions. Instead, the language relied upon by the trial court means, as the Fourth District has reasoned, “‘[T]he immunity provided by section 768.28(9)(a) is both an immunity from liability and an immunity from suit, and the benefit of this immunity is effectively lost if the person entitled to assert it is required to go to trial.’” Furtado v. Yun Chung Law, 51 So.3d 1269, 1277 (Fla. 4th DCA 2011) (emphasis in original) (citation omitted).
We also note that section 790.33 makes no mention or citation to section 768.28. The supreme court has explained that “[wjhen the Legislature has intended particular statutory causes of action to be subject, to the requirements of section 768.28(6), it has made its intent clear by enacting provisions explicitly stating that section 768.28 applies.” See Bifulco v. Patient Bus. & Fin. Servs., Inc., 39 So.3d 1255, 1258 (Fla.2010) (“See, e.g., § 556.106(2)(a), Fla. Stat. (2004) (‘Any liability of the state and its agencies and its subdivisions which arises out of this chapter shall be subject to the provisions of s. 768.28.’); § 45.061(5), Fla. Stat. (2004) (‘This section shall not be construed to waive the limits of sovereign immunity set forth in s. 768.28.’)”). Thus, even if Appellant’s cause of action against Appellee Ma-chen was characterized as being tortious in nature, the fact that section 790.33 makes no mention of section 768.28 supports Appellant’s position and our determination that section 768.28 does not apply in this case. See Bifulco, 39 So.3d at 1258 (“Because the Legislature did not *150 refer to section 768.28 or its subsections within chapter 440, and explicitly authorized retaliatory discharge.actions when the State is the employer, it is apparent that the Legislature intended to waive sovereign immunity in retaliatory discharge acr tions, independent of the waiver and notice provisions contained in section 768.28.”); see also Bd. of Trs. of Fla. State Univ. v. Esposito, 991 So.2d 924, 926-27 (Fla. 1st DCA 2008) (holding that the express reference in the Florida Civil Rights Act to section 768.28(5), but not to section 768.28(8), indicated that the Legislature did not intend for section 768.28(8) to apply to actions brought under, the Act); Fla, Dep’t of Educ. v. Garrison, 954 So.2d 84, 85 (Fla. 1st DCA 2007) (holding that section 768.28 has no application in connection with a claim under the Public Whistle-blower’s Act where the Act makes no specific reference to section 768.28).
As for whether Appellee Machen could be found liable for damages under section 790.83, we agree with the trial court’s determination that damages under the statute may not be awarded against an individual. Section 790.83, as previously explained herein, provides for the Legislature’s preemption of the field of regulation of firearms and ammunition. The pertinent provisions for purposes of our analysis as to this issue provide in part:
(3) PROHIBITIONS; PENALTIES.—
(a) Any person, county, agency, municipality, district, or other entity that violates the Legislature’s occupation of the whole field of regulation of firearms and ammunition, as declared in subsection (1), by enacting or causing to be enforced any local ordinance or administrative rule or regulation impinging upon such exclusive occupation of the field shall be liable as set forth herein.
[[Image here]]
(e) If the court determines that a violation, was knowing and willful, the court shall assess a civil fine of up to $5,000 against the elected or appointed local government official or officials or administrative agency head under whose jurisdiction the violation occurred.
[[Image here]]
(e) A knowing and willful violation of any provision of this section by a person acting in an official capacity for any entity enacting or causing to be enforced a local ordinance or administrative rule or regulation prohibited under paragraph (a) or otherwise under color of law shall be cause for termination of employment or contract or removal from office by the Governor.
(f) A person or an organization .whose membership is adversely affected by any ordinance, regulation, measure, directive, rule, enactment, order, or policy promulgated or caused to be enforced in violation of this section may file suit against any county, agency, municipality, district, or other entity in any court of this state having jurisdiction over any defendant to the suit for declaratory and injunctive relief and for actual damages, as limited herein, caused by the violation. A court shall award the prevailing plaintiff in any such suit: •
1. Reasonable attorney’s fees and costs in accordance with the laws of this state, including a contingency fee multiplier, as authorized by law; and
2. The actual damages incurred, but not more than $100,000.
§ 790.33, Fla. Stat. (2013) (emphasis added).
It is true, as Appellant contends, that subsection (3)(a) speaks to “any person, county, agency, municipality, district, or other entity” that violates the Legislature’s occupation of the whole field of reg *151 ulation of .firearms and ammunition and that it states “shall be liable as set forth herein.” However, section 790.33(3)(c) allows for civil fines up to $5,000 against the “elected or appointed local government official or officials or administration head” under whose jurisdiction the violation occurred. Section 790.33(3)(e) addresses cause for termination of employment “by a person acting in an official capacity for any entity” enacting or causing to be enforced prQhibited ordinances or rules. Those two subsections clearly apply to people. While Appellant argues that Appellee Máchen can be sued for damagés under subsection (3)(f), that provision allows for declaratory and injunctive relief and for actual damages against “any county, agency, municipality, district, or other entity.” Had the Legislature wished to include the term “any person” as it did in subsection (3)(a), it could have done so.' Yet, instead of using the same phrase “[a]ny person, county, agency, municipality, district, or other entity,” it excluded “any person” and used “county, agency, municipality, district, or other entity” in subsection (3)(f). Courts are not at liberty* to add words to statutes' that were not placed there by the Legislature. See Caceres v. Sedano’s Supermarkets, 138 So.3d 1224, 1225 (Fla. 1st DCA 2014); see also Esposito, 991 So,2d at 926 (“ ‘[Wjhen the legislature includes particular language in one section of a statute but not in another section of the same statute, the omitted language is presumed to have been excluded intentionally.’ ”) (Citation omitted).
Appellant offers no support for the proposition that “any entity” includes individuals. Indeed, the Florida Statutes contain several instances where the Legislature differentiated between “person” and “entity.” See, e.g., § 17.0416, Fla. Stat. (“The Chief Financial Officer, through the Department of Financial Services, may provide accounting and payroll services on a fee basis under contractual agreement with eligible entities, including, but not limited to, state universities, community colleges, units of local government, constitutional officers, and any other person or entity having received any property, funds, or moneys from the state.”) (Emphasis added); § 17.65, Fla. Stat. (“The Chief Financial Officer may prescribe the forms, and the manner of keeping the same, for all receipts, credit advices, abstracts, reports," and other papers furnished the Chief Financial Officer by the officers of this state or other persons or entities as a result of their having, or depositing, state moneys.”) (Emphasis added); § 20.055(l)(b), Fla. Stat. (defining “Entities contracting with the state” to mean “for-profit arid not-for-profit organizations or businesses that have a legal existence, such as corporations or partnerships, as opposed to natural persons — ”) ' (Emphasis ’ added); §• 39.00145(2)(c), Fla. Stat. (“If a child or the child’s caregiver, guardian ad litem, .or attorney requests access to the child’s- case record, any person or entity that fails to provide any record in the case record under assertion of a claim of exemption from the public records requirements of chapter 119, or fails to provide access within a reasonable time,-: is subject to sanctions and penalties under s. 119.10.”) (Emphasis added). Based upon such, Appellee Ma-chen is not liable for actual damages under section.790.33.[4]
- Accordingly', we affirm the trial court’s order granting summary judgment in Ap-pellees’ favor on both the housing and motor vehicle claims, and we affirm the trial court’s order granting in part Appel- *152 lee Machen’s motion to dismiss on the basis of section 790.33, not section 768.28.
AFFIRMED.
MAKAR, J., concurs in part and concurs in result with opinion; OSTERHAUS, J., concurs in part and in Result with opinion.

. In the en banc decision, the majority held that UNF’s policies and regulations, to the extent they prohibited possession of securely encased firearms in motor vehicles, were illegal ánd unenforceable. See 133 So.3d at 977.

. The name of the pertinent bill was "Carrying of Firearms in National Forests.” A legislative staff analysis noted that the "bill repeals the statutes prohibiting persons from carrying firearms in national forests, authorizes special permits for the carrying of firearms in national forests, and providing penalties for violations.” See Fla. H.R. Comm, on Crim. Just., HB 1029 (2006) Staff Analysis (April 4, 2006). It was also noted that section 2 of the law "[a]mends s. 790.25, F.S., correcting cross-references.” Id. A legislative staff analysis for the companion Senate bill explained that section 2 of the law "[ajmends s. 790.25, F.S. to clarify that the protections provided for lawful ownership, possession and use of firearms and other weapons do not apply for persons violating ss. 790.07-790.115, F.S. and ss. 790.145-790.19, F.S.” See Fla. S. Comm, on Crim. Just., SB 1546’ (2006) Staff Analysis (Mar. 22, 2006).

. Section 1001.706(7)(b), Florida Statutes (2013), provides as follows: ■
The Board of Governors shall develop guidelines for university boards of trustees relating to the use, maintenance, protec- ■ tion, and control of university-owned or university-controlled buildings and grounds, property and equipment, name, trademarks and other proprietary marks, and the financial and other resources of the university. Such authority may include placing restrictions on activities and on access to facilities, firearms, food, tobacco, alcoholic beverages, distribution of printed materials, commercial solicitation, animals, and sound. The authority provided the board of trustees in this subsection includes the prioritization of the use of space, property, equipment, and resources and the imposition of charges for those items.
(Emphasis added).

. We note that Appellee Machen did not file a cross-appeal as to the trial court’s determination that he could be sued under section 790.33 for declaratory and injunctive relief.