IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRIDGEVILLE RIFLE & PISTOL CLUB, LTD.; MARK HESTER; JOHN R. SYLVESTER; MARSHALL KENNETH WATKINS; BARBARA BOYCE, DHSc, RDN; ROGER T. BOYCE, SR.; and the DELAWARE STATE SPORTSMEN'S ASSOCIATION, | : : : : : : : : | |
| Plaintiffs, | : : | C.A. No. S16C-06-018 THG |
| v. | : : | |
| DAVID SMALL, SECRETARY OF THE DELAWARE DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL; DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL; ED KEE, SECRETARY OF DELAWARE DEPARTMENT OF AGRICULTURE; and DELAWARE DEPARTMENT OF AGRICULTURE, | : : : : : : : : : : : : : | |
| Defendants. | : | |

Date Submitted:     September 2, 2016
Date Decided:       December 23, 2016

Francis G.X. Pileggi, Esquire, Aimee M. Czachorowski, Esquire, Justin M. Forcier, Esquire, Eckert Seamans Cherin & Mellott, LLC, Wilmington, Delaware, Attorneys for Plaintiffs.

Ralph K. Durstein, III, Esquire, Devera B. Scott, Esquire, Department of Justice, Dover, Delaware, Attorneys for Defendants.

GRAVES, J.

**Procedural Background**

Bridgeville Rifle & Pistol Club, Ltd.; Mark Hester; John R. Sylvester; Marshall Kenneth Watkins; Barbara Boyce, DHSc, RDN; Roger T. Boyce, Sr.; and the Delaware State Sportsmen's Association (collectively, "Plaintiffs") filed suit in the Court of Chancery against David Small, Secretary of the Delaware Department of Natural Resources and Environmental Control; the Delaware Department of Natural Resources and Environmental Control ("DNREC"); Ed Kee, Secretary of the Delaware Department of Agriculture; and the Delaware Department of Agriculture ("DOA") (collectively, "Defendants"), seeking injunctive and declaratory relief. On June 6, 2016, the Court of Chancery denied Plaintiffs' request for injunctive relief and granted Defendants' Motion to Dismiss for lack of equitable jurisdiction without prejudice.

On June 10, 2016, Plaintiffs re-filed their complaint in this Court, seeking declaratory relief. The briefs the parties initially filed with the Court of Chancery were resubmitted to this Court. Both sides seek judgment on the pleadings. Briefing was completed on July 15, 2016. The Court requested additional information from the parties concerning history of the regulations at issue. The parties have supplemented the record with background material and the matter is now ripe for decision.

**Factual Background**

The facts at the center of this litigation are simple. Plaintiffs and/or their members have permits to carry concealed deadly weapons. They seek to bring their firearms into Delaware's State Parks - overseen by DNREC - and State Forests - overseen by DOA. Currently, DNREC regulations prohibit the possession of firearms upon any land or waters administered by the DNREC's Division of Parks and Recreation. Similarly, DOA regulations prohibit the possession

of firearms in state forests except "for legal hunting."[1] Plaintiffs ask the Court to issue a judgment declaring that the regulations promulgated by DNREC and DOA (collectively, "Agency Defendants") restricting the possession of firearms in state parks and forests (a) violate Article I, Section 20 of the Constitution of the State of Delaware, (b) are preempted by existing Delaware law, and/or (c) exceed the statutory scope of authority granted to Agency Defendants. Accordingly, Plaintiffs ask the Court to prohibit enforcement of the regulations.

## Discussion

### A. Standard of Review

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."[2] "On such a motion, the Court must accept all the complaint's well-pled facts as true and construe all reasonable inferences in favor of the non-moving party."[3] "The standard for a motion for judgment on the pleadings is 'almost identical' to the standard for a motion to dismiss."[4]

As a practical matter, however, cross-motions for judgment on the pleadings function in a similar manner to cross-motions for summary judgment.[5] As Superior Court Civil Rule 56 provides, "Where the parties have filed cross-motions for summary judgment and have not

---

[1] 3 *Del. Admin. C.* § 402-8.0, ¶ 8.8.

[2] Super. Ct. Civ. R. 12(c).

[3] *Blanco v. AMVAC Chem. Corp.*, 2012 WL 3194412, at *6 (Del. Super. Aug. 8, 2012).

[4] *Id*. (citation omitted).

[5] *Silver Lake Office Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Jan. 17, 2014).

2

presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[6]

## B.     History of Regulations at Issue

At issue are two regulations. Specifically, a DNREC regulation presently provides:

It shall be unlawful to display, possess or discharge firearms of any description, air rifles, B.B. guns, sling shots, or archery equipment upon any lands or waters administered by the Division [of Parks and Recreation], except with prior written approval of the Director.[7]

A DOA regulation similarly restricts firearm possession on State land: "Firearms are allowed for legal hunting only and are otherwise prohibited on State Forest lands."[8] (Collectively, these two regulations will be referred to as "the Regulations.")

The Regulations had been in existence for quite some time, in one form or another, prior to the adoption of Delaware's version of the Second Amendment to the United States Constitution in 1987. I borrow from Plaintiffs' correspondence to the Court in response to the Court's inquiry about the history of these regulations:

[T]he historical changes to the relevant regulations is [sic] as follows: In April 1962, at page 5 (paragraph 10), the Delaware State Park Regulations

---

[6] Super. Ct. Civ. R. 56(h).

[7] 7 *Del. Admin. C.* § 9201-21.0, ¶ 21.1. When Plaintiffs filed their complaint in the Court of Chancery, this regulation read: "It shall be unlawful to display, possess or discharge firearms of any description, air rifles, B.B. guns, sling shots or archery equipment upon any lands or waters administered by the Division [of Parks and Recreation], except *by those persons lawfully hunting in those areas specifically designated for hunting by the Division, or* those with prior written approval of the Director." The emphasized language was removed, effective April 1, 2016, and prior to Plaintiffs filing their complaint with this Court.

[8] 3 *Del. Admin. C.* § 402-8.0, ¶ 8.8.

3

prohibited all firearms on any park area. In June 1968, the Regulations were amended under Section 9.01 to permit firearm possession by visitors only if they obtained the prior written consent of the Commission, even if those visitors were not engaged in hunting. That Regulation was amended in May 1977 under Section 8.04, which expanded the prohibition to air rifles, B.B. guns, and sling shots. Also in May 1977, all firearms except shotguns were prohibited for use in hunting under Section 10.01(f). In June 2004, the Regulations were again amended to include archery equipment among the items prohibited in Section 24.3.

The Delaware Forest Service's Blackbird State Forest Rules prohibited the possession or discharge of firearms except for licensed hunters starting in 1979, at paragraph 8. The Ellendale & Redden State Forest Regulations also contained the same prohibition in 1981, in paragraph 8. In January 2003, the Forest Service's Regulations prohibited all firearms from March to August in Section 7.9. In June 2006, the date restriction was removed, but firearms that were not being used for lawful hunting were still prohibited under Section 8.8. That same language still remains in the current version of the Administrative Code.[9]

In light of this historical context, the Court turns to Plaintiffs' specific allegations.

C.      **Do the Regulations Run Afoul of Article I, Section 20 of the Delaware Constitution?**

The Delaware Constitution provides: "A person has the right to keep and bear arms for the defense of self, family, home and State, and for hunting and recreational use" (hereinafter, "Section 20").[10] As noted above, the Regulations were in place when Section 20 was adopted in 1987.

Plaintiffs argue the Regulations violate Delaware citizens' right to bear arms as set forth in Section 20. Plaintiffs emphasize that Section 20 recognizes a constitutional right to bear arms outside of the home as well as a right to bear arms for hunting and recreation in addition to self-defense. Defendants do not reject Plaintiffs' characterization of Section 20, but they contend Section 20 does not grant Plaintiffs an unfettered right to possess firearms in State Parks and

---

[9] Plaintiffs' Letter to the Court, dated September 2, 2016 (footnotes omitted).

[10] *Del. Const.* art. I, § 20.

4

Forests. Defendants assert the Regulations do not place an undue burden on Plaintiffs' Section 20 rights.

Plaintiffs and Defendants alike rely upon the recent case *Doe v. Wilmington Housing Authority*[11] for their respective positions. In *Doe*, the Delaware Supreme Court addressed the scope of Section 20. In so doing, the Supreme Court examined the State's interest in public safety and balanced that against the interest of a citizen's right to keep and bear arms under the Delaware Constitution. The Delaware Supreme Court ultimately struck down lease provisions for apartments of a Delaware public housing authority that restricted where and when its residents, their household members, and their guests could carry and possess firearms. Residents, members of a resident's household, and their guests were permitted to possess firearms in a resident's unit but otherwise were not permitted to display or carry a firearm in any common area, except when the firearm was being transported to or from the resident's unit or was being used in self-defense. In other words, a resident was permitted to transfer a firearm from his home to a car or vice versa. But a resident was not permitted to carry a firearm to the common laundry or TV room. A violation of the housing authority's policy could result in the resident's eviction.

The Supreme Court observed,

> On its face, the Delaware provision is intentionally broader than the Second Amendment [to the United States Constitution] and protects the right to bear arms outside the home, including for hunting and recreation. Section 20 specifically provides for the defense of self and family *in addition* to the home.[12]

This right to bear arms is considered a fundamental constitutional right and therefore

---

[11] 88 A.3d 654 (Del. 2014).

[12] *Id*. at 665 (emphasis in original).

subject to higher scrutiny when statutory action threatens to conflict with or burden it. In *Doe*, the

Supreme Court determined that when government action infringes upon the right protected by

Section 20, intermediate scrutiny is the proper level of constitutional review:

> [I]ntermediate scrutiny requires more than a rational basis for the action, but less than strict scrutiny. Intermediate scrutiny seeks to balance potential burdens on fundamental rights against the valid interests of government. To survive intermediate scrutiny, governmental action must "serve important governmental objectives, and [must be] substantially related to [the] achievement of those objectives." The governmental action cannot burden the right more than is reasonably necessary to ensure that the asserted governmental objective is met.[13]

The State must prove that a governmental restriction is substantially related to an

important government objective and does not burden the Plaintiffs' rights more than is

reasonably necessary.

In *Doe*, the Supreme Court found that the common areas of the housing unit that were

open to the public - *i.e.*, the laundry and social rooms - are essentially extensions of a resident's

private quarters and, as such, are part of the resident's living space. The Supreme Court

emphasized that "an individual's interest in the right to keep and bear arms is strongest when 'the

weapon is in one's home or business and is being used for security.'"[14] The Supreme Court

concluded that the fact that the government owned the housing development did not end the

inquiry. Rather, the purpose for which the property is used must be taken into consideration.

Finding "[p]ublic housing is a home as well as a government building,"[15] the Supreme Court

concluded the public housing association's restriction was overbroad and burdened the residents'

---

[13] *Id*. at 666-67 (citations omitted).

[14] *Id*. at 667-68 (quoting *Griffin v. State*, 47 A.3d 487, 491 (Del. 2012)).

[15] *Id*. at 668 (internal quotation marks and citation omitted).

right to bear arms more than was reasonably necessary

Notably, the Supreme Court drew a distinction relevant to this case:

> Unlike a state office building, courthouse, school, college, or university, the services provided by the [housing authority] in the common areas are not the services typically provided to the public on government property.... Some regulation of possessing firearms on [housing authority] property could pass intermediate scrutiny, for example prohibiting possession in offices where state employees work and state business is being done.[16]

The Agency Defendants are authorized by statute to create rules and regulations.[17] The purpose of DNREC regulations is set forth within its regulations thus:

> It shall be the intent and purpose of the Division of Parks and Recreation to adopt only those minimal Rules and Regulations that are essential to the protection of Park resources and improvements thereto and to the safety, protection and general welfare of the visitors and personnel on properties under its jurisdiction.[18]

The purpose of DOA regulations is similarly set forth in the Delaware Administrative Code:

> The State Forests of Delaware are open to members of the public for their enjoyment. Most legal forms of non-motorized recreation are permitted. The following regulations were developed to ensure that these publicly owned lands are conserved, protected, and maintained for the benefit of all.[19]

The Agency Defendants are responsible for managing and overseeing the recreational activities of all persons, citizens and non-citizens alike, so they all may enjoy both our parks and forests. Without question, ensuring the safety of all visitors is an important consideration.

---

[16] *Id*. at 668.

[17] 3 *Del. C.* § 1011; 7 *Del. C.* § 4701(a)(4).

[18] 7 *Del. Admin. C.* § 9201-2.0, ¶ 2.1.

[19] 3 *Del. Admin. C.* § 402-2.0, ¶ 2.1.

"[W]here the government is a proprietor ..., it has a legitimate interest in controlling unsafe or disruptive behavior on its property."[20] Firearms are designed to injure or kill. "[A]s experience demonstrates, [a firearm] can be converted instantaneously from currency to cannon."[21]

Of course, there are many responsible gun owners and users, including Plaintiffs and/or their members. However, the Agency Defendants were not unreasonable in concluding that permitting unregulated firearms in State Parks and State Forests would heighten the potential of injury or death to the visitors thereto. The Agency Defendants also have prohibited other dangerous instruments. For example, in the State Parks slingshots and archery equipment are forbidden. To ban slingshots and archery but to allow firearms defies logic. A contextual, objective reading of the Regulations reveals the primary concern of the Agency Defendants is to permit all visitors to enjoy the State's public areas without undue risk of harm. Hunting is restricted in both time and place, not out of a desire to infringe upon a citizen's right to bear arms but so that an informed visitor can be aware of where and when hunting and, therefore, the discharge of a lethal weapon, may be taking place.

As for Plaintiffs' concerns for self defense, the Court observes the need to respond to a threat with a firearm is diminished when firearms are prohibited in the area.

I find that the Agency Defendants have an important governmental objective of keeping the public safe from the potential harm of firearms in State Parks and Forests. The Regulations are substantially related to the achievement of this important governmental objective. Moreover, the Regulations do not place an undue or unreasonable burden on Plaintiffs. Plaintiffs remain

---

[20] *Doe*, 88 A.3d at 668.

[21] *Smith v. U.S.*, 508 U.S. 223, 240 (1993).

8

free to hunt on State lands in accordance with the reasonable restrictions in place. Their right to

bear arms to protect themselves if the need for self-defense arises is not hindered but, rather,

aided in effect by the presence of the Regulations. The Regulations do not run afoul of Section

20.

**D.    Did the General Assembly Preempt the Agency Defendants from Promulgating the Regulations?**

Plaintiffs also allege the regulations at issue are inconsistent and preempted by the

regulatory scheme promulgated by the Delaware General Assembly.

The Delaware Supreme Court has summarized the state of preemption law in Delaware

thus:

> In Delaware, the State and its political subdivisions are permitted to enact similar provisions and regulations, so long as the ... regulations do not conflict. But, where a conflict exists between a state statute and a municipal ordinance, the statute must always prevail. The predominant test for conflict in a preemption analysis is whether the state statute was intended to be exclusive.
>
> Legislative intent to make a state statue exclusive of any regulation of the same subject matter by a political subdivision may be express or implied. Express exclusivity intent exists where the statutory text or legislative history explicitly provides or demonstrates that the state statute is intended to replace or prevail over any pre-existing laws or ordinances that govern the same subject matter. Implied exclusivity intent may be found where the two regulations are inconsistent; for example, where a state statute prohibits an act that is permitted by a local ordinance. To be inconsistent by implication, however, the local ordinance must hinder the objectives of the state statute.[22]

Plaintiffs theorize that the regulations are implicitly preempted because the General

Assembly has enacted a "comprehensive" regulatory scheme governing the use and possession of

firearms. In the alternative, Plaintiffs posit the General Assembly also has explicitly preempted

---

[22] *Cantinca v. Fontana*, 884 A.2d 468, 473-74 (Del. 2005) (internal quotation marks and citations omitted).

Agency Defendants from promulgating regulations restricting a citizen's right to possess a firearm because the General Assembly has expressly preempted municipalities and counties from regulating firearm possession.

In support of Plaintiffs' implicit preemption argument, they point to Title 11 of the Delaware Code, which establishes a licensing requirement for the carrying of a concealed deadly weapon and criminalizes the carrying of such a weapon absence such a license. The Code also prohibits certain people from possessing firearms and establishes punishment for people who possess firearms under certain circumstances. The code also increases the punishment for any violation of the criminal code if it occurs within a school zone.

Plaintiffs also cite Title 24 of the Delaware Code, which establishes the operating requirements for a deadly weapons dealer.

The Court concludes the aforementioned statutes do not comprise a "comprehensive regulatory scheme" that implicitly preempted Defendants' ability to promulgate the Regulations. In so doing, the Court observes that the criminal sections cited concerning a current or retired law enforcement officer's ability to possess a concealed weapon are subject to the laws of any state that "[p]rohibit or restrict the possession of firearms on any state or local government property, installation, building, base, or park."[23] Had the General Assembly viewed these sections as part of a comprehensive regulatory scheme preempting the promulgation of the Regulations, this language would be unnecessary and, in fact, illogical. In sum, the establishment of a licensing scheme and the regulation of weapons dealing does not constitute a comprehensive statutory scheme that invalidates existing regulations and prohibits the enactment of additional regulations

---

[23] 11 *Del. C.* § 1441A(b)(2); 11 *Del. C.* § 1441B(b)(2).

10

where and when arms of the State deem them appropriate.[24]

The Court also rejects Plaintiffs' argument that the General Legislature explicitly preempted Defendants' authority to adopt the Regulations because the Delaware Code expressly prohibits municipalities and counties from enacting laws, ordinances, or regulations prohibiting, restricting, or licensing firearms. Plaintiffs assert it makes "little sense" for the General Legislature to adopt these provisions but not also intend to limit the Agency Defendants' ability to do the same. It is disingenuous to cite *specific* statutory language preempting other agencies for the proposition that the Defendants were *implicitly* included. Clearly, the General Assembly is capable of drafting, and enacting, language that explicitly preempts an entity from issuing regulations on firearm possession. If it had wanted to include Agency Defendants, the Court is confident it would have been able do so in precisely the same manner as it did with respect to counties and municipalities. The Court finds it also worth noting that the Agency Defendants are, in fact, arms of the State and not separate and distinct legal entities.

In support of Plaintiffs' explicit preemption argument, they assert Agency Defendants have their authority granted to them by the State. Precisely. The authority to regulate the safety of their grounds is delegated to Agency Defendants by the State. Defendants have done so

---

[24] Plaintiffs cite to a Michigan case in support of their implicit preemption argument. In that case, the Court of Appeals of Michigan held that Michigan state law "*completely occupies* the field of firearm regulation to the exclusion of local units of government." *Capital Area Dist. Library v. Michigan Open Carry, Inc.*, 826 N.W.2d 736, 738 (Mich. Ct. App. 2012) (emphasis in original). The statute at issue in that case reads, in pertinent part, "A local unit of government shall not ... enact or enforce any ordinance or regulation" pertaining to the possession of firearms. Mich. Comp. Laws § 123.1102. This case is not instructive not only because Delaware has no such provision but also because a "local unit" is defined under the Michigan Code as a "city, village, township, or county." Agency Defendants are not local units but arms of the State.

11

accordingly. Preemption requires more than concurrent regulation of the same subject matter.[25]

Plaintiffs must be able to demonstrate that the Regulations "hinder the objectives of the state statute."[26] Plaintiffs are unable to do so.

As a final matter on the issue of preemption, the Court looks to the recent case out of Florida, *Florida Carry, Inc. v. University of Florida*.[27] In that case, the plaintiffs challenged a policy adopted by the University of Florida that prohibited firearms in university housing. The Florida District Court rejected the plaintiffs' preemption argument even though Florida's statutory scheme attempts to preempt the field of regulation of firearms and ammunition with very specific language, "[T]he Legislature hereby declares that it is occupying the whole field of regulation of firearms and ammunition...."[28] The Delaware Code contains no such language.

The Court concludes the Defendants were not preempted by any act of the General Assembly when they enacted the Regulations.

### E. Did the Agency Defendants Exceed Their Scope of Authority in Promulgating the Regulations?

Finally, Plaintiffs contend that Agency Defendants lacked the authority to adopt the Regulations. Plaintiffs correctly maintain that Agency Defendants possess limited powers: "It is well established that administrative agencies... derive their powers and authority *solely* from the

---

[25] *Cantinca*, 884 A.3d at 474.

[26] *Id*.

[27] 180 So. 3d 137 (Fla. Dist. Ct. App. 2015), *review denied*, 2016 WL 1427725 (Fla. Apr. 12, 2016).

[28] Fla. Stat. § 790.33. Other states have adopted similar preempting language. See Michael B. de Leeuw, *The (New) New Judicial Federalism: State Constitutions and the Protection of the Individual Right to Bear Arms*, 39 Fordham Urb. L.J. 1449, 1492 n. 226 (2012).

12

statute creating such agencies and which definite their powers and authority."[29]

The enabling statutes for DOA provide, in pertinent part: "[DOA] is the agency of the State assigned plenary authority and responsibility in public forestry functions...."[30] Further, DOA's powers and duties are described, "[DOA] shall have direction of all forest interests and all matters pertaining to forestry and woodlands within the State. [DOA] shall... devise and promulgate rules and regulations for the enforcement of the state forestry laws and for the protection of forest lands...."[31] DOA is further directed to impose a fine for any violation of any such rule or regulation.[32]

Similarly, the State has delegated to DNREC the broad power to "[m]ake and enforce regulations relating to the protection, care and use of the areas it administers."[33] A violation of any rule or regulation is subject to a fine, or imprisonment in certain circumstances.[34]

Each agency adopted regulations aimed at addressing and ensuring the safety of State-owned lands. Such regulation was not only authorized by State delegation of authority but encouraged.

---

[29] *Office of the Commissioner, Del. Alcoholic Beverage Control v. Appeals Comm'n, Del. Alcoholic Beverage Control*, 116 A.3d 1221, 1226 (Del. 2015) (citing *Wilmington Vitamin & Cosmetic Corp. v. Tigue*, 183 A.2d 731, 740 (Del. Super. Ct. July 18, 1962)).

[30] 3 *Del. C.* § 1001.

[31] 3 *Del. C.* § 1011.

[32] *Id.*

[33] 7 *Del. C.* § 4701(a)(4).

[34] 7 *Del. C.* § 4702.

13

**Conclusion**

For the reasons set forth herein, the Court grants Defendants' Motion on the Pleadings. The Regulations do not run afoul of the Delaware Constitution, Defendants were not preempted by the General Assembly in enacting the Regulations, and Defendants did not exceed the scope of the authority granted to them by statute in promulgating the Regulations.

IT IS SO ORDERED.